SIMON, Justice.
By this petitory action the plaintiff claims title to and possession of an irregularly shaped tráct of land comprising 408 acres situated in Section 40, Township 14 South, Range 20 East, St. Charles Parish, Louisiana, shown on the free-hand tri-colored sketch of the plat shown in the record and described more fully in his petition as follows :
“Tract No. 1: That portion of Fractional Section 40 lying West of the Section line between Section 17 and Section 18, produced, and North of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River. The said tract being colored in blue on the sketch shown below.
“Tract No. 2: That portion of Fractional Section 40 lying West of the Section line between Section 17 and 18, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River. The said tract being colored in red on said sketch.
“Tract No. 3: That portion of Fractional Section 40 lying East of the Section line between Section 17 and Section 18, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River. The said tract being colored in green on said sketch.”

*717

*719 The trial court rendered judgment in favor of defendant and against the plaintiff, his heirs and assigns, dismissing his suit and rejecting his demand.
During the pendency of this suit below the plaintiff, Jacques E. Blevins, died and thereafter this case was prosecuted and this appeal is taken by his estate, appearing through the duly qualified and authorized testamentary executrix.
In order to properly dispose of the issues herein presented it is necessary to chronologically set forth the material and pertinent transfers pleaded by plaintiff in support of his alleged title, as well as those pleaded by defendants. At the outset it should be stated that the only land involved herein is a portion of fractional Section 40, Township 14 South, Range 20 East, as hereinabove platted and described, notwithstanding that the instruments of conveyance hereinafter referred to include the description of land or lands other than the subject property.
The transfers pleaded by plaintiff in support of his alleged title are as follows:
1. The act of sale dated September 10, 1906 by O. W. Crawford to Truck Farm Land Company, Ltd.
2. The tax sale of property assessed in the name of Truck Farm Land Company, Ltd. for the unpaid taxes' for 1907, dated July 25, 1908 by the sheriff and ex-officio tax collector for the Parish of St. Charles to Allan T. Dusenbury, and confirmation thereof dated July 31, 1908.
3. The act of sale dated December 15, 1910 by Truck Farm Land Company, Ltd. joined by Allan T. Dusenbury, to the Louisiana Farm Land Company, Ltd.
4. The act of sale dated December 17, 1910 by the Louisiana Farm Land Company, Ltd. to Julius F. Funk. By an act under private signature dated March 14, 1911 the said Funk transferred an undivided one-half interest in the said property to Harry C. Snell, who on August 21, 1911 by a similar act reconveyed same to Julius F. Funk.
5. The act of sale dated July 21, 1911 by Julius F. Funk and Harry C. Snell, to J. Lahroy Slusher.
6. The act dated July 26, 1911 by J. Lahroy Slusher to the Louisiana Delta Lands Company.
7. The act dated November 21, 1913 by Louisiana Delta Lands Company to Edward Wisner.
8. The act dated April 21, 1917 by the executors of the estate of Edward Wisner to Mrs. Mary Jane Wisner.
9. The act dated April 21, 1917 by Mrs. Mary Jane Wisner to Wisner Estates, Inc., a Louisiana corporation.
10. By act under private signature dated May 22, 1940, amended by act dated December 12, 1945, the Wisner Estates, Inc. transferred to plaintiff herein an undivided *721 one-half interest in the property. By act dated December 12, 1945 the Wisner Estates, Inc. transferred all of its right, title and interest in and to the subject property to plaintiff. All of said deeds were recorded in the conveyance records of the Parish of St. Charles. (The various mineral deeds executed, not being material to the issue herein, are not here delineated.)
In the act dated December 15, 1910 the property therein transferred by the Truck Farm Land Company, Ltd., joined by Allan T. Dusenbury to the Louisiana Farm Land Company, Ltd., appellant’s author in title, is described in part as follows:
“All lots or Frc. Sec. 38, 39 and 40 except the previously sold portions of same which are as follows:
“There is also excepted from Sections 39 and 40 approximately 440 acres previously sold to Albert Phenis, as per private act passed before William Renaudin, Notary Public, and recorded in the Conveyance Records of St. Charles Parish, in Book -, Page-.
“All of the above being in Township 14 South, Range 20 E.”
Transfers executed subsequent to the said deed of December 15, 1910 excluded or excepted the approximately 440 acres previously sold to Albert Phenis, as above recited.
Plaintiff also pleads a ten-year prescriptive title and alleges that his author in title, Truck Farm Land Company, Ltd., from the date of its acquisition dated September 10, 1906, as did its successors in title, took and maintained actual open, notorious and uninterrupted physical possession as owner or owners thereof for a period in excess of ten years.
Plaintiff also presented a third or independent title based upon a tax deed dated July 20, 1920. For the year 1919 the subject property was assessed in the name of Wisner Estates, Inc.; and because of non-payment of taxes said property was adjudicated to the State of Louisiana on July 17, 1920. On or about June 11, 1921 the said property was redeemed by H. H. Timken, and on June 30, 1921 judgment was rendered recognizing him as having paid the full redemption price and, as a creditor, therefore subrogated to the rights of the State, including the liens and privileges bearing against each specific tract of land to the extent of the actual taxes bearing against the same. Thereafter in extr cution of said judgment Timken became the adjudicatee. On February 13, 1926, by act under private signature, the said Timken sold the subject property herein to the Border Research Corporation, the name of which was subsequently changed to the Louisiana Land and Exploration Co., who on December 12, 1945, sold and transferred the said property to Jacques E. Blevins, plaintiff.
*723 The transfers pleaded by defendants in support of their ’ alleged title are the following :
1. The tax sale dated July 25, 1908 by the sheriff and ex-officio tax collector for the Parish of St. Charles to Allan T. Dusenbury, and confirmation thereof dated July 31/ 1908, being the same tax deed relied on by plaintiff.
2.. The act of sale dated March 9, 1910 by Allan T. Dusenbury to Albert Phenis, the property therein being described as follows:
“That portion of lot or Fractional section 40 lying West of the section line between Sections seven (7) and eight (8) above, produced and a line drawn West from a point on the center line of the Morgan Louisiana and Texas R. R. Co., said point being 600 feet North of the intersection of said Railroad with Bayou Saut D’Ours, and, that portion of lot or Section Thirty-nine (39) bounded on the North by the above described land, on the East by the right of way of the said Morgan Louisiana & Texas R. R., on the South by Bayou Saut D’Ours, and on the West by Section Forty (40), all being in T. 14 S. R. 20 E. South Eastern Land District of Louisiana West of the Mississippi River and containing Four hundred and forty-two (442) acres, more or less; # *
3. The act of sale dated April 21, 1910 by Albert Phenis to Ray C. Power, the property therein described being the same as contained in the Dusenbury-Phenis deed of March 9, 1910.
4. The correction deed dated March 16, 1912 by Albert Phenis to Ray C. Power, purportedly correcting the description contained in the Phenis to Power deed of April 21, 1910 so as to read the same as shown below in the Dusenbury-Phenis correction deed of April 18, 1912.
5. The correction deed dated April 18, 1912, by Allan T. Dusenbury to Albert Phenis purportedly correcting the description contained in the Dusenbury-Phenis deed dated March 9, 1910 so as to read as follows:
“That portion .of lot or Fractional section 40 lying West of the section line between Sections seven (7) and eight (8) above produced and south of a line drawn West from a point on the center line of the Morgan’s Louisiana and Texas Railroad Co., said point being 600 feet North of the intersection of said railroad, with Bayou Saut D’Ours, and that portion of lot or section thirty-nine (39) bounded on the north by the above described line on the east by the right of way of the said Morgan’s Louisiana and Texas R. R., on the South by Bayou Saut D’Ours, and on the west by section 40, all in T. 14 S. R. 20 East; Southeastern Land District *725 ■of Louisiana, West of the Mississippi river, and containing Four hundred and forty-two (442) acres, more or less; the description of said otherwise being correct.”
6. The act of sale dated July 23, 1915 by Ray C. Power to Manufacturers Record Publishing Company, a defendant herein, the description therein contained being the same as that embodied in the Phenis-Power and Dusenbury-Phenis correction deeds as hereinabove set forth.
It is observed that the asserted titles of both litigants find their source in a common author, Allan T. Dusenbury.
It is also observed that by the said correction deeds the description in both the original Dusenbury-Phenis deed of March 9, 1910 and the original PhenisPower deed of April 21, 1910 was sought to be corrected so as to insert the words “South of” before the phrase “a line drawn west from a point on the center line, * * * ” and so as to substitute the word “line” for the word “land,” the latter change being made with respect to only that portion of land described as being located in Section 39. Hereinafter in disposing of the contentions of the parties our discussion shall be confined to the original Dusenbury-Phenis deed of March 9, 1910, and the Dusenbury-Phenis April 18, 1912 correction deed. Whatever rights flow from the Phenis-Power transactions are impertinent here.
Appellant attacks the legality and validity of the original Dusenbury-Phenis deed dated March 9, 1910 and contends that the description therein employed is meaningless and thus fatally defective, not subject to the identification of any specific tract of land sought to be conveyed, the defectiveness being such as not capable of serving as a deed translative of title to any land. With equal force he contends that his author in title acquired from Dusenbury by deed dated December 15, 1910 all of Section 40 except that portion of land acquired by Albert Phenis by deed dated March 9, 1910; that, the description contained in said deed of March 9, 1910 being meaningless and fatally defective as well as the source from which the exception obtains its force and color, the said exception is equally fatal; and that therefore plaintiff’s author in title, by virtue of the deed of December 15, 1910 became vested with full title to all of Section 40, on the ground that where the exception falls the property in its entirety, including that attempted to be excepted, becomes vested in the grantee.
Appellant further contends that the execution of the correction deed of April 18) 1912 was futile for the reason that in the December 15, 1910 deed Dusenbury divested himself of all right, title and interest which he had or may have had to any and all of the lands therein conveyed *727 and described and plaintiff’s author in title became 'vested with full ownership of all of Section 40 including the land therein sought to be fcxcepted.
The appellees concede that the March s', 1910' deed may be burdened "with amguity but contend that by employing alleged common practices and methods such as the supplying of specific calls and directions and substituting words for those therein contained- the- property described could be located and further that the correction instrument of April 18, 1912 validly and adequately supplied the boundary calls and specific -directive omitted from the March 9, 1910 deed and therein substituted the word “line” for the word “land.”
Appellees also contend that appellant’s predecessors in title are estopped from claiming title to the disputed acreage for the reason that all transfers subsequent to the deed dated December 15, 1910 consistently excepted approximately 440 acres located in Sections 39 and 40, Township 14 South, Range 20 East previously sold to Albert Phenis and that therefore the recognition of this exception in the various transfers constituted an acquiescence in and a ratification of appellees’ ownership thereof.
'In the alternative appellees plead a ten-year prescriptive title in that they and their 'authors' in title, under their respective actjuisifibfts, went into actual, physical, open and undisturbed possession of said land and remained in such possession during their respective ownerships for a period in excess of ten years and that therefore they have acquired a valid prescriptive title thereto.
Therefore we deem the primary issue to be whether or not appellant’s predecessor in title acquired all of Section 40 in the deed dated December 15, 1910, or whether the appellees’ predecessor in title had theretofore acquired the three above-described tracts in Section 40 by virtue of the deed dated March 9, 1910. If the description in the March 9, 1910 deed is held to be sufficient to validly identify the land therein transferred then the necessity to consider any other aspect of this case is eliminated. If Phenis did in fact and in law acquire the land that appellees contend is described in the said deed, then appellant has no claim whatever to the property involved in this litigation. Hence, the title of appellees must rest exclusively on the validity of the description contained in the March 9, 1910 deed, and we are concerned primarily with (1) the interpretation of said description, and (2) the effect thereon of the correction deed dated April 18, 1912, both descriptions being shown above.
Referring to the above sketch of the plat shown in the record, the section line between Sections 7 and 8 is the line marked A-B and said line produced through Section *729 40 is the line marked C-D. The line drawn West from the point on the center line of the Morgan’s Louisiana & Texas R. R. Co., said point being 600 feet North of the intersection of said railroad with Bayou Saut D’Ours, is the line East-West marked X-Y. The land enclosed West of line C-D and North of line X-Y is shown as Tract 1. The land enclosed West of line C-D and South of line X-Y is shown as Tract 2. The land enclosed East of line C-D and South of line X-Y is shown as Tract 3.
It is readily seen that in relation to the sketch the description in the March 9, 1910 deed calls for land lying West of line C-D and West of line X-Y. It is significant that if line X-Y is to be used as a boundary line the land bounded thereby 'must be located either North or South thereof, or both. Without a North or South directive it is obviously impossible to locate the land and intended to be described in said deed. Therefore, in order to give meaning to the use of line X-Y as a boundary, a North or South directive, or both, must appear in and be a part of the description. For it is manifest that no land can be intelligently described as lying west of an East-West line; therefore such a directive is meaningless.
Appellees contend that the words “South of” should be inserted so as to show the land transferred as that portion or fraction of Section 40 lying West of line C-D and “South of” line X-Y, and thereby cause the description to read as follows:
“That portion of lot or fractional Section 40 lying West of the Section line between Sections 7 and 8 above, produced and South of a line drawn West from a point on the center line of the Morgan’s Louisiana and Texas Railroad Company, * * * ” (Inserted words italicized by us.)'
Should we accept appellees’ contention, which we do not, the land then described would obviously be enclosed within that area West of line C-D and South of line X-Y and thus limited to Tract 2 in the above sketch. Furthermore, there is just as much, if not more justification in adding the words “North of” instead of “South of,” for as a matter of fact in the absence of a specific directive the land first enclosed upon the drawing of the specific lines C-D and X-Y would lie West of line C-D and North of line X-Y; and in such event the description would be limited to the area shown as Tract 1 in said sketch. Thus it is evident that by inserting either the words “North of” or the words “South of” to the same description and in the same manner, two completely different results are obtained.
However, appellees argue that the embodying of the words “South of” in the description as above indicated would include ■not only Tract 2, lying West of line C-D and South of line X-Y, but also Tract 1, lying West of line C-D and .North of line X-Y, and Tract 3, lying East of line’C-D and South of line X-Y. Whether we accept a North or South directive, to include Tract *731 3 in the description would obviously totally disregard the specific calls for land lying West of line C-D, there being no call for land lying East of line C-D.
Referring to the correction deed dated April 18, 1912, it is observed that the words “South of” have been inserted before the phrase “a line drawn West from a point on the center line, * * * ” and the word “line” has been substituted for the word “land,” the latter with respect to the portion of land described as being in Section 39, which section is not involved in this suit. It is also observed that the words supplied or changed by the correction instrument are the identical words employed by appellees in their endeavor to supply specific calls and directives to the apparently meaningless description contained in the original deed of March 9, 1910. The legal effect of said correction deed will be hereinafter discussed. However, if it can be held that the correction instrument validly corrected the description in the March 9, 1910 deed, then in that event the descriptive calls would, as above observed, place and limit the property to that area enclosed West of line C-D and South of line X-Y, shown on the above sketch as Tract 2.
Nevertheless, from a review of all of the expert testimony produced at the trial we are convinced that the evidence overwhelmingly establishes the facts that the description contained in the Dusenbury-Phenis deed of March 9, 1910 in view of the absence of boundary calls and directives utterly fails to definitely identify any specific property located within Section 40. The testimony of Fred N. Shutts, J. C. de Ar-mas, Jr. and O. E. Young, all qualified experts produced by the appellee, Humble Oil and Refining Co., is to the effect that it is impossible for any surveyor to locate the land described therein within the disputed area without first making the changes, additions and substitutions suggested by appellees and as hereinabove related. The expert witnesses for appellant, Earl M. Collier and Guy Seghers, also testified that from the calls and directives contained in said deed standing alone it was impossible to determine the specific land in Section 40 and that the description was meaningless unless boundary calls could be properly-added.
The testimony of Dusenbury, a certified surveyor as well as the common author of the litigants, must be considered by us as a repudiation of the contention of appellees that the description contained in the deed of March 9, 1910 covers Tracts 1, 2 and 3, the subject property. He freely admitted that said description, the basis of appellees’ title, is so wanting in calls and directives that a person with ordinary sense would not have written such a description to describe the disputed subject property and that any intelligent person reading the document would know that the description therein given could not cover the subject property *733 involved. Yet it is shown that Mr. Dusenbury himself was the sole grantor in said deed. His own opinion of its faulty description was emphatically emphasized when he testified and we quote him: “ * * no one but a nitwit would not know that an error was made.”
We find no more justification for adding one directive than we do for adding another. Although it is conceivable that boundary calls can properly be added to erase the ambiguity or uncertainty of description contained in some deeds, however, in the instant case in the light of the evidence, the boundary calls suggested by appellees cannot be considered justified.
The interpretation of the description contained in the March 9, 1910 deed vitally affects the interpretation of the exception contained in the December 15, 1910. deed, determining thereby the extent of the acquisition by plaintiff’s author in title when he purchased all of fractional Sections 38, 39 and 40, excepting approximately 440 acres allegedly sold to Albert Phenis.
 Taking first the contention of appellees that in the event the description of the Dusenbury-Phenis deed of March 9, 1910 should be declared meaningless and devoid of a description with such identity as to be translative of title, then in that event they argue that the Dusenbury-Phenis correction deed of April 18, 1912 clarifies the description and clearly covers the property involved in this suit. We conclude, however, that said correction instrument theretofore detailed can have no validating effect whatever upon the description contained in the March 9, 1910 deed. This is so for the reason that:
(1) the description contained in the March 9, 1910 deed is fatally defective, not possessing the attributes of a deed translative of title;
(2) the exception recited in the acquisition by plaintiff’s author in title by deed dated December 15, 1910 must find its force and effect in the March 9, 1910 deed, and said latter deed being fatally defective and not translative of title, the said exception must be ignored and considered as not written;
(3) that Dusenbury having divested himself of all right, title and interest to all of Section 40 and the exception in the December 15, 1910 deed being considered as though not written, the said deed of December 15, 1910 in favor of plaintiff’s author in title must be held to have conveyed the entire Section 40, including the part sought to be excepted.
The effect of an exception in a deed when the exception fails to validly identify the property sought to be excepted has long been settled in our jurisprudence.
In the case of Harrill v. Pitts, 194 La. 123, 193 So. 562, 564 there was involved a petitory action wherein plaintiff claimed *735 the Wl/¿ of the SEJ4 and the E 28 acres of the NE}4 of the SWJ4 of Section 13, Township 23 North, Range 16 West, Caddo Parish, Louisiana. The defendants claimed that plaintiff’s description was defective because it described 120 acres by governmental description, giving the quarter section, section number, township number and range, but ended with a reservation of twelve acres which, allegedly, were not properly identifiable. It was contended that the grantee, because of the unidentified reservation of 12 acres, could not locate the 108 acres which were intended to be purchased. In disposing of this contention this Court held that in view of the description giving the quarter section number, township number and range number same was sufficient to identify the conveyance. We further held that if the excepted property could not be located, then the exception was null and void and not the deed itself. In support of the conclusions reached by us we approvingly quoted from Volume 16, American Jurisprudence, page 619, and held as follows:
“ ‘If an exception is not described with certainty, the grantee shall have the benefit of the defect. In other words, the exception, and not the whole deed, is void; and the grantee is invested with title to all the property mentioned in the deed disregarding the exception.’
“The above text is supported by a number of decisions of the Supreme Court of various states.'
“The rule on the subject is thus stated in Volume 18, Corpus Juris, pages 347 and 348:
“ ‘An exception should describe the property with sufficient certainty. Uncertainty or vagueness of description renders a reservation void unless there is something in the exception, deed or evidence, whereby it can be made sufficiently certain. * * *
“ ‘A grant is not, however, necessarily vitiated because of the invalidity of an attempted reservation, nor because of an ambiguity in the exception. The fact that an exception is void for uncertainty has the effect merely to make the conveyance operative as to the whole tract, although it has been held that this rule does not apply where there is but a single description which is intended to describe the land conveyed. * * * An exception of a certain number of acres out of the corner of a square tract is sufficiently definite.’
“See, also, 27 R.C.L. 317 and Lange v. Waters, 156 Cal. 142, 103 P. 889, 19 Ann. Cas. 1207, 1209.
“In Southern Iron & Steel Co. v. Stowers, 189 Ala. 314, 66 So. 677, 679, the Court said:
“ ‘Where a deed of bargain and sale on valuable consideration describes an entire tract of land * * * excepting a part, and the description of the part is vague and uncertain, the uncertainty affects the exception only, and that, not the grant, will *737 fail. This results from two principles: That a deed delivered must have effect, if possible; and the bias of presumptive construction is inclined against the grantor who assumes to speak.’ ”
The Harrill case, supra, was cited in 162 A.L.R. 285, at page 288 et seq., in support of the general proposition of law which is stated as follows:
“The cases are practically uniform in holding that, uncertainty of or insufficiency in the description of an area of land which the grantor or mortgagor attempts to except from the operation of a deed or mortgage affects only the validity of the exception and not the validity of the instrument as a whole; accordingly the exception, if so uncertain as to be void, will be ignored and the deed or mortgage will have the effect of conveying the entire tract described including the part sought to be excepted.”
In the light of the evidence and law heretofore discussed the description contained in the deed of March 9, 1910 can little avail the appellees in their effort to identify the 440 acres mentioned in the exception contained in the deed of December 15, 1910 by virtue of which plaintiff’s author in title acquired all of Section 40. Necessarily,, the attempted description of the property sought to be conveyed in the deed of March 9, 1910 and carried as an exception in the deed of December 15, 1910 was so fatally defective and without legal meaning so as to render said exception null and void, thereby vesting in appellant’s author in title the ownership of the entire fractional Section 40, Township 14 South, Range 20 East.
 Although a deed conveying land must contain a description that identifies the transferred property, there is -no specific provision in our Civil Code that sets forth the requisites of an adequate description; but our Courts have developed judicial requirements and have generally established and settled the rule of law in this State that if the description of property in a deed is either erroneous or misleading it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence.
Since the early case of Kernan v. Baham, 45 La.Ann. 799, 13 So. 155, this Court has adhered to the doctrine therein stated that parol evidence to establish identity is allowable, as is likewise parol evidence of possession in aid of a defective or ambiguous description, but this is only in cases where there is a sufficient body in the description to leave the title substantially resting on writing, and not essentially on parol. This same general proposition is restated in Jackson v. Harris, 18 La.App. 484, 136 So. 166, 137 So. 655; and Lemoine v. Lacour, 213 La. 109, 34 So.2d 392.
*739 In the instant case we are constrained to hold that the description contained in the original Dusenbury-Phenis deed of March 9, 1910 is so deficient in boundary calls or directives as to leave the title substantially resting not on what is contained therein but completely on the strength of parol or extrinsic evidence. Were we to resort to such evidence in aid of that which is meaningless in order to identify the property allegedly conveyed, we would be indulging in a rewriting of or a complete reformation of the deed forming the basis of appellees’ claim. A distinction can readily be drawn in a case where an erroneous or ambiguous description is sought to be corrected and in a case where the grantor has failed to set out necessary calls, boundaries or directives to identify the property sought to be conveyed. In the former case a reformation of the instrument is always permitted as between the parties and in some cases even as between third parties. But in the latter case a contrary result obtains, not permitting a complete reformation or rewriting of the deed, particularly where the rights of third parties have intervened, as we find here.
Relative to the correction instrument of April 18, 1912, both appellant and appellees contend that the description contained therein is unambiguous, and the trial judge so held, notwithstanding the different interpretations thereof made by the parties hereto. Appellant contends that if such correction deed validly corrected the March 9, 1910 deed, then and in that event the only property conveyed thereby is that designated as Tract 2, whereas appellees contend that by said corrected description all of the disputed land contained in Section 40, Tracts 1, 2 and 3 was conveyed thereby. Therefore, assuming arguendo that this correction was valid as well as unambiguous certainly the rule of law permitting parol and extrinsic evidence would not be applicable. LSA-C.C. Art. 2276; Smith v. Chappell, 177 La. 311, 148 So. 242; Snelling v. Adair, 196 La. 624, 199 So. 782; Doiron v. O’Bryan, 218 La. 1069, 51 So.2d 628. Having previously disposed of the validity of the correction deed, no further analysis of said instrument and relative evidence is required.
Appellees have filed the acquisitive prescription of ten years under LSA-C.C. Art. 3478, which article provides that he who acquires an immovable in good faith and by just title prescribes for it in ten years. Under LSA-C.C. Art. 3479 one of the essential elements to support said acquisitive prescription is that the title shall be legal, and sufficient to transfer the property. It necessarily follows that where a deed is fatally defective as a record title it cannot form the basis of a ten-year prescriptive title.
In the case of McHugh v. Albert Hanson Lumber Co., 145 La. 421, 82 So. 392, 394, the defendant claimed title by the prescrip *741 tion of ten years. The defect or absence of description in the title was held to be fatal to the plea. In so holding, we said: “For one of the requisites of the prescription of 10 years is a title translative of the property * * *; and in order to be translative of the property the title must identify it; and this, the tax collector title of defendant does not do. * * *”
In the case of Bendernagel v. Foret, 145 La. 115, 81 So. 869, 870, we said:
“We do not consider it sufficient, to support a plea of prescription of 10 years, that the description in the deed relied upon might be construed to include the land in question. It is necessary, to sustain the plea, that the deed relied upon is prima facie — not merely that the purchaser believed it to be — translative of the property in question. As to the title, of course, it is sufficient, to sustain the prescription of 10 years, that the purchaser, in good faith, believed that his vendor owned the property; but, as to the deed being upon its face translative of the supposed title, the descripion must include the property in question.”
In the case of Castera’s Heirs v. New Orleans Land Co., 125 La. 877, 51 So. 1021, 1023, in rejecting a ten-year prescriptive plea, we said: “If one takes possession of a tract of land under a deed which does not contain a description sufficiently correct to enable an average surveyor, in point of ability, to identify it, he cannot claim to be a possessor in good faith. * * *
“It is necessary that the description should be sufficiently complete to serve the purpose of identification.”
See, also, Salmen Brick & Lumber Co., Ltd. v. H. Weston Lumber Co., 144 La. 186, 80 So. 249; Harang v. Gheens Realty Co., 155 La. 68, 98 So. 760; Bayard v. Baldwin Lumber Co., Limited, 157 La. 994, 103 So. 290; Ball v. Price, 168 La. 226, 121 So. 752; and Baldwin v. Arkansas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442.
Accordingly, since we are convinced that the deed of March 9, 1910 was hopelessly defective and was, therefore, not sufficient to be translative of title, it cannot form the basis for a ten-year prescriptive title.
The pleas of estoppel, ratification and acquiescence are based upon the contention that plaintiff and his authors in title, in various transactions subsequent to the acquisition of December 15, 1910 consistently recited the exception of “approximately 440 acres previously sold to Albert Phenis,” and that these recitals have the effect of a recognition of defendants’ ownership in and to said acreage. These pleas are equally unimpressive, for one can never be divested of his title to property except in the manner prescribed by law. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42; Gibson v. *743 Pickens, 187 La. 860, 175 So. 600; and Snelling v. Adair, supra.
' This leaves for our consideration the remaining contention of appellees that the acreage call of 440 acres contained in the March 9, 1910 Dusenbury-Phenis deed makes the otherwise defective description perfectly clear and unambiguous. In other words appellees contend that even were they to concede that the description by calls and bounds would serve completely different interpretations and would not encompass all of the property involved in this litigation, that the mere presence of the acreage call in said deed is sufficient to establish their title in and to Tracts 1, 2 and 3.
It is obvious that Section 40 contains acreage far in excess of 440 acres. Were we to employ the acreage call alone we would be at a loss to know whether this acreage should be confined within the limits of Section 40 and, if so, what specific location therein, or confined within Section 39, or located within both. This being true, it is manifest that in the absence of directives and proper calls to fix the location of the acreage with identifiable definiteness and certainty there is no justification for us to arbitrarily place the said acreage within Section 40 and segregate from said Section Tracts 1, 2 and 3 shown on the above sketch as a valid and legal answer to the said acreage call.
It is a well-established rule that the identification of land by acreage or quantity is the weakest, lowest ranking of all the enumerated standards or guides in describing property sought to be conveyed- and, in the absence of specific and definite calls which afford the identity and location of the property, mere acreage calls alone without other means of identification, properly resorted to, fail to comply with rules applicable to the requirements of descriptions translative of title. See Bender v. Chew, 129 La. 849, 56 So. 1023; Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855; City of New Orleans v. Joseph Rathborne Land Co., Inc., 209 La. 93, 24 So.2d 275.
In his petition plaintiff alleges that he is further entitled to judgment forthwith ordering the Humble Oil & Refining Company, one of the appellees herein, to release and relinquish its possession of the property here involved and that said Humble Oil & Refining Company be ordered to render him a full accounting for any and all oil, gas and other minerals which it may have removed from said property.
Accordingly, for the reasons assigned, it is ordered that the judgment of the trial court be and the same is hereby annulled, reversed and set aside. It is further ordered that there be judgment in favor of the estate of Jacques E. Blevins, appearing through the duly qualified and authorized *745 testamentary executrix, recognizing it to be the true and lawful owner of and as such entitled to the immediate possession, with all right, title and interest, in and to the following described property:
“Tract No. 1: That portion of Fractional Section 40 lying West of the Section line between Section 17 and Section 18, produced, and North of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River.
“Tract No. 2: That portion of Fractional Section 40 lying West of the Section line between Section 17 and Section 18, produced, and South of a "line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being 600 feet North of the intersection of said Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River.
“Tract No. 3: That portion of Fractional Section 40 lying East of the Section line between Section 17 and Section 18, produced, and South of a line drawn West from a point on the center line of the Southern Pacific Railroad track, said point being ^600 feet North of the intersection of said' Railroad track with Bayou Saut D’Ours, being in Township 14 South, Range 20 East, Southeastern Land District of Louisiana, West of the Mississippi River.”
It is further ordered that the Humble Oil & Refining Company release and relinquish its possession of the above described property to said owner thereof and that said Company render unto said owner a full accounting for any and all oil, gas and other minerals which it may, at any time, have removed therefrom.
It is further ordered that this cause be remanded to- the lower court for a proper adjudication of all rights of the parties herein in accord with this decree.
All costs of this appeal to be paid by the defendants-appellees.
HAMITER, McCALEB and HAWTHORNE, JJ., dissent.
McCALEB, Justice (dissenting).