LANDRY, Judge.
Defendant (Appellant) appeals from judgment enjoining construction of multifamily dwellings on certain lots in Broadm-oor Heights Subdivision (Broadmoor), Ter-rebonne Parish, in alleged violation of building restrictions limiting use to single family dwellings. The issues presented are: (1) May a non-owner holding an option to purchase impose valid building restrictions on real property prior to actual acquisition of record; and (2) If valid, are such restrictions sufficiently express in this instance to constitute public notice. The trial court determined both issues adversely to Appellant. We reverse and render judgment declaring the restrictions inapplicable to Appellant’s property.
On August 24, 1963, Emmett Glynn acquired from Calvin Prevost and others, the option to purchase 10 specifically described parcels of land in Terrebonne Parish. The option, duly recorded provides for a series of purchases extending over a period of 10 years at a unit price of $3,000.00 per acre for all lands subject to the option. Glynn was given until February 14, 1964, to purchase parcels or areas 1 and 2, and until Feburary 15,1967, to buy areas 3 and 4. If areas 3 and 4 were timely acquired, Glynn was accorded further successive options to purchase every three years commencing August 15, 1969, two combined areas successively, and in order, namely areas 5, 6, 7, 8, 9, and 10, for the aforesaid unit price. *70 The option also provided that if any one option was not timely exercised, all remaining options would be terminated. By mutual recorded agreements, Glynn’s option was extended to March 16, 1964, and again to December 28, 1966. The latter extension rescheduled the purchase dates of areas 3 through 10, inclusive.
On January 21,1965, a corporation known as Broadmoor Heights, Inc. (Developer), of which corporation Glynn was an incorporator and shareholder, purchased tracts or areas 1 and 2 from Prevost and his co-owners. This transfer was recorded February 2, 1965. The act recites that vendors transfer Glynn’s option to Developer. Glynn appeared as a party to the transfer and expressly consented to the transfer of his option rights to Developer. Subsequently, Developer purchased additional areas pursuant to the option.
Certain maps and plats of record herein, (some of which are public record and some not), indicate that Broadmoor Heights is in effect a rectangularly shaped subdivision fronting on the east side of La. Highway 659. On the west end of the subdivision, the land is subdivided into unnumbered areas designated “Broadmoor Heights Commercial Park” and “Service Real Estate”. (See Exhibit “C” dated November 15, 1976, a plat which contains no preparation data, no surveyor’s name and no indication of recordation in the public records.) To the east of the portions designated as Commercial Park and Service Real Estate are situated 10 areas, each apparently subdivided into unnumbered lots. Another plat, Exhibit “1”, by Bobby F. Warren, C.E., dated November 6, 1964, recorded Feb. 2, 1965, shows a portion of the property of Prevost in the form of a long rectangle fronting on the East side of Highway 659. The southern portion of this highway frontage to a depth of about 250 feet is indicated as belonging to the Bank of Terrebonne.
Pursuant to the aforesaid options, Developer and/or Glynn acquired all of the Pre-vost lands. In the course of development of these holdings into Broadmoor Heights, Developer recorded 5 sets of restrictions, only one of which, namely restrictions dated March 29, 1966, recorded April 1, 1966, is relied upon by plaintiff. These particular restrictions recite that Developer is owner of Broadmoor which is situated in Sections 2, 4, and 94, T 17 S, R 17 E, Terrebonne Parish as shown on map thereof by Bobby F. Warren, C.E. dated June 10, 1965, recorded February 8, 1965. Said restrictions further recite:
“APPEARER FURTHER DECLARED that said corporation has caused said land to be sub-divided for residential purposes, said subdivision to be known as BROADMOOR HEIGHTS SUBDIVISION, and that desiring to protect future owners of property in said subdivision:
THEY DO HEREBY ESTABLISH the following RESTRICTIONS
Lots 1 through 9, Block 1
Lots 1 through 14, Block 2
Lots 1 through 14, Block 3
Lots 1 through 13, Block 4
Lots 1 through 24, Block 5
Lots 1 through 4, Block 6
Lots 1 through 25, Block 7
Lots 1 through 3, Block 8
Lots 1 through 3, Block 9
Lots 1 through 34, Block 10
which said restrictions shall bear against and effect BROADMOOR HEIGHTS SUBDIVISION, and shall be covenants running with the land, on the terms, conditions, and specifications hereinafter set forth:
1. LAND USE AND BUILDING TYPE: No lot shall be used except for residential purposes, other than LOTS ONE (1) thru NINE (9) of BLOCK ONE (1). No building shall be erected, altered, placed or permitted to remain on any lot other than one detached, single family dwelling with either a garage or carport; the minimum building to be not less than 1150 sq. ft., not including carports or garages.
2. COMMERCIAL PROPERTY: LOTS ONE (1) thru NINE (9) of BLOCK (1) are specifically reserved for commercial property and the covenants and restrictions in this act shall not apply to *71 said lots; however, said commercial lots shall be subject to the following restrictions, which shall be covenants running with the land: . . ”
The only plat of record to which the aforesaid restrictions could refer or apply is one entitled “Lot Layout Broadmoor Heights Subdivision, Warren & Associates, C.E. dated June 10,1965, recorded February 8, 1966”. This plat shows Blocks 4, 5, 6, 9, 10,12,14,15,16,19,20, 21, 22, 23, and 24, of which only Blocks 4 and 5 and a portion of Blocks 6, 9, and 10 are subdivided into lots. It shows Blocks 4 and 5 and part of Block 6 running parallel to the northern boundary of the subdivision and Blocks 9 and 10 lying to the south of and being separated from Blocks 4, 5 and 6 by Douglas Drive. All remaining blocks shown on this plat are unsubdivided and bear the notation “For Future Development”. The plat does not show Blocks 2, 3, 7, 8, 11, 13, 17 or 18 of Broadmoor if in fact the subdivision contains such numbered blocks. Neither does the map show the 9 lots in Block 1 which the restrictions indicate are exempt from the single family residential use requirement.
Appellant’s lots, designated A, B, C, D, and E, Block 9, Addendum 5, Broadmoor Heights Subdivision, were acquired by Appellant from E. M. Glynn, Inc., on May 6, 1977. No map of Addendum 5 appears of record.
Conceding that it did not own subject lots at the time the aforesaid restrictions were recorded, Appellees maintain that its subsequently acquired ownership was sufficient to render the restrictions effective. Appel-lees also suggest that the restrictions are sufficient to make clear the intent to place the public on notice that all of Broadmoor was subject to the limitations therein imposed by virtue of the use of the language “said restrictions shall bear against and effect Broadmoor Heights Subdivision”. In so contending, Appellees rely on Salerno v. DeLucca, 211 La. 659, 30 So.2d 678 (1947) and Lillard v. Jet Homes, Inc., 129 So.2d 109 (La.App.2d Cir. 1961).
Appellant maintains that the restrictions are not binding at all because they were imposed by one not a record owner of the property sought to be restricted. Alternatively, Appellant urges that the restrictions are not binding because they do not purport to encompass the entire subdivision and are limited to the expressly designated lots in Blocks 1 through 10, inclusive, and Appellant’s lots are not included therein.
It is well settled that one purchasing real property may rely upon the public record and that unrecorded agreements respecting real property are of no effect upon one purchasing on the face of the record. McDuffie v. Walker, 125 La. 152, 51 So. 100 (1909).
Our law favors free and unrestricted use of real property. Blevins v. Manufacturers Record Publishing Company, 235 La. 708, 105 So.2d 392 (1958).
Doubt as to the existence, validity or extent of building restrictions is resolved in favor of the unrestricted use of immovable property. Fatjo v. Mayer, 247 La. 327, 170 So.2d 859 (1965); Leonard v. Lavigne, 245 La. 1004, 162 So.2d 341 (1964).
Relying on Salerno, above, and Lillard, above, Appellees contend that Developer’s intent was to include all of Broadmoor in the recorded restrictions. Our consideration of these authorities indicates that Salerno, above, holds intent to be significant only when “differences arise as to the extent or limitation of these restrictions”. See 30 So.2d 680. We note also that Lil-lard, above holds that the “area covered by the scheme must be described so as to be clearly ascertainable”. See 129 So.2d 112.
We pretermit consideration of whether such restrictions may be validly imposed by one not a record owner at the time the restrictions are recorded. Assuming, solely for argument’s sake, that such restrictions may be validly imposed by one holding only an option to purchase, we find subject restrictions inapplicable to Appellant’s property.
In the light of the rules that the law favors unrestricted use of property and that *72 doubt as to the validity or extent of building restrictions is resolved in favor of unlimited use, we conclude that Appellant’s property is not affected by the restrictions relied upon by Appellees. The restrictions in question apply to 10 specifically numbered blocks and expressly enumerated lots in each block. The restrictions also refer to a map which does not show Blocks 1, 2, 3, 7, and 8 mentioned in the restrictions and which map shows considerably more blocks than those listed in the recorded restrictions. This variance between the map and restrictions casts serious doubts as to whether Developer intended the restrictions to apply to any Blocks other than those expressly enumerated. Addendum Number 5 to Broadmoor, in which Appellant’s property is located, is not mentioned in the restrictions. Its location is not shown on the map to which the restrictions refer. If Developer intended the restrictions to apply to all addenda to Broadmoor, it would have been a very simple matter for the restrictions to expressly so state.
It is ordered, adjudged and decreed that the injunction issued herein by the trial court be and the same is hereby annulled and set aside and judgment rendered herein dismissing Appellee’s suit, with prejudice, all costs of these proceedings to be paid by Appellees.
Reversed and rendered.