491 So.2d 764 (1986)
CAMELLIA PLACE SUBDIVISION BLOCK 1 ASSOCIATION, Plaintiff-Appellant,
v.
Darrel V. WILLET, Jr., et al, Defendants-Appellees.
No. 85-616.
Court of Appeal of Louisiana, Third Circuit.
June 25, 1986.
Rehearing Denied August 13, 1986.
*765 Daniel E. Broussard, Jr., Alexandria, for plaintiff-appellant.
Elizabeth E. Foote, Alexandria, for defendants-appellees.
Before STOKER and KING, JJ., and COX, J. Pro Tem.[*]
RONALD D. COX, Judge Pro Tem.
Plaintiff, the Camellia Place Subdivision-Block 1 Association, an unincorporated association comprised of the owners of twenty-five lots in this subdivision in the City of Alexandria, filed a suit for a declaratory judgment. The association sought a decree subjecting defendants, the present owners of another lot in Block 1 in the subdivision, to the use restrictions created by a previous owner. Plaintiff also sought a nullification of an act executed by defendants entitled "Revocation of All Building Restrictions." Defendants filed an exception of no cause of action contending the use restrictions are insufficient to create a servitude, building restriction and/or stipulation pour autrui. The trial judge sustained the exception of no cause of action and plaintiff appealed. We affirm.
The sole issue on appeal is whether the trial court erred in finding plaintiff had no cause of action against defendants. Specifically, we must determine if the use restrictions are enforceable as a building restriction, stipulation pour autrui, predial servitude, personal servitude, or historical preservation restriction.

FACTS
Plaintiff is an unincorporated association comprised of the owners of twenty-five lots in Block 1 of Camellia Place Subdivision in the City of Alexandria. Defendants presently own the adjoining commercially zoned Lot 2 of Block 1 on Jackson Street Extension. In May of 1978, Lot 2 of Camellia Place Subdivision was owned by Mrs. Omarine Burns Rozier, John Simpson Rozier, IV, and Charlotte Rozier Aday (hereafter Roziers). At that time the Roziers applied to the City of Alexandria to rezone Lot 2 as "C" commercial. The Roziers' neighbors in Camellia Place Subdivision opposed the rezoning. As a compromise the Roziers executed *766 an act entitled "Building Restrictions" (hereafter Rozier Act) on May 29th, 1978 in exchange for withdrawal of the opposition to the rezoning. The act was subsequently recorded in the public record of Rapides Parish. The minutes of the meeting of the City of Alexandria Zoning Commission reflect the compromise:
"The application of Mrs. Omarline Rozier et al was then taken up for consideration. The owners are requesting annexation with the paroperty (sic) being zoned "C" Commercial when annexed. Mr. Alfred Mansour spoke in the time before the meeting started explaining the Building Restrictions to be placed on the subject property and binding for 25 years to eliminate certain objectionable uses allowed in "B" Business and "C" Commercial. Some property owners from Mohon Drive, about 20 in number, were present and asked questions of Messrs. Mansour, Dan Broussard appearing as the attorney for some owners on Mohon and Joe Testa. During the meeting further discussion was held on the application. There being no protest to the zoning, the discussion on this item ended. * * *
"* * * The petition to annex Lot 2, Block 1, Camellia Place to the City of Alexandria bearing a request from Mrs. Omarline Rozier et al to have said lot being the premises at 4801 Jackson Street zoned "C" Commercial when annexed be APPROVED because of compromise and restrictions resolved by the applicant and the neighbors as well as the fact that this would be a continuation of the "C" Commercial district already established on Jackson Street."
Subsequently the Roziers sold the property to Mr. and Mrs. John Waters, who in turn sold the property to defendants in 1981. On July 23, 1984 defendants executed and recorded an act entitled "Revocation of All Building Restrictions," purporting to revoke all restrictions imposed by the Rozier Act.
At the heart of this litigation are the restrictive clauses in the Rozier Act limiting the use of Lot 2. It was not to be used for a liquor store, gas station, convenience store, restaurant, auto shop, parking facility, laundry, bar or beauty shop.
The Rozier Act specifically states, "These covenants and restrictions are established to run with the land and shall be binding on all parties owning the above described tracts for a period of twenty-five (25) years from the date hereof."
CLASSIFICATION OF THE RESTRICTIVE CLAUSES

a. Building Restrictions

Building restrictions must be a part of a general plan that is feasible and capable of being preserved. LSA-C.C. art. 775. When there is doubt as to the existence, validity, or extent of building restrictions, the matter should be resolved in favor of unrestricted use. LSA-C.C. art. 783. The record in this case reflects no general development plan covering the Camellia Place Subdivision. The restrictive clauses affect only one lot in the subdivision. We conclude the language in the Rozier Act does not create a building restriction.

b. Predial Servitudes

Building restrictions imposed on an individual lot without a general development plan may be considered a predial servitude. A predial servitude requires the existence of a dominant and a servient estate belonging to different owners. The purpose of the servitude is to benefit the dominant estate. LSA-C.C. art. 646. Because building use restrictions are nonapparant servitudes, they must be created by title. LSA-C.C. arts. 707 and 739. In the case at bar, the Roziers executed an act of "Building Restrictions" for Lot 2. For these restrictions to operate as a predial servitude they must have been established by the owner of the dominant estate for the benefit of his estate or by a person acting in his name or in his behalf. LSA-C.C. art. 735. The trial judge in his written reasons for judgment stated "The appearers in the document were the then owners of the only property in question. They sought to set forth their desires for the future use of this property. However, nowhere therein *767 do they declare that their restrictions are to be applicable or infavor (sic) of any other estate." Nowhere in the Rozier Act are the other lots in the subdivision mentioned, nor is it possible to identify them through any language in the act, or any other act in the public record.
"Servitudes are restraints on the free disposal and use of property, and are not, on that account, entitled to be viewed with favor by the law. In consequence of this servitudes claimed under titles are never sustained by implicationthe title creating them must be express, as to their nature and extent, as well as to the estate which owes them, and the estate to which they are due." Parish v. Municipality No. 2, 8 La.Ann. 145 (1853); Buras Ice Factory v. Department of Highways, 235 La. 158, 103 So.2d 74 (1957).
The minutes of the Alexandria Zoning Commission dated May 29, 1978 are the only indications of the compromise which led to the execution of the Rozier Act. These minutes refer to the Roziers and "the neighbors" entering into a compromise, but it is also not clear as to who was involved and which properties would have benefited. Parol evidence may not be used to establish title to immovables. Blevins v. Manufacturers Record Publishing Co., 235 La. 708, 105 So.2d 392 (1957), on rehearing 105 So.2d 411 (La.1958). Third parties dealing with immovable property have the right to rely on the face of the public record, and they are not bound by any secret agreements which may exist between prior owners of property. Brewster Development Co., Inc. v. Fielder, 271 So.2d 299 (La.App. 2nd Cir.1972), writ refused, 272 So.2d 695 (La 1973).
We conclude that the language in the Rozier Act failed to create a predial servitude.

c. Personal Servitudes

In a motion for a new trial, plaintiff argues that the Rozier Act created a personal servitude of right of use. A personal servitude is defined as "a charge on a thing for the benefit of a person" and consists of three sorts: Usufruct, habitation, and right of use. LSA-C.C. art. 534.
Right of use is a dismemberment of ownership, akin to usufruct. It differs from usufruct because it includes only the element of "USUS" (use), while usufruct includes both usus and "fructus" (fruits). A.N. Yiannopolus, Louisiana Civil Law Treatise, Vol. 3, p. 471 (1978). The Louisiana Civil Code of 1870 specifically provided for the use of a herd of animals, of a house, and of consumables. Use includes a limited right to fruits, but only a portion of the fruits needed for the satisfaction of that person and his family. La.Civil Code art. 630 (1870). According to old Article 636, a person having the use of a herd of cattle could take nothing other than milk needed "for his daily use and that of his family."
Clearly the Roziers did not intend to grant the right for any of their neighbors to physically use their property.

d. Stipulation Pour Autrui

Although the trial judge does not address the issue in his reasons for judgment, plaintiff claims the Rozier Act established a stipulation pour autrui. A contracting party may stipulate a benefit for a third person called a third party beneficiary. LSA-C.C. art. 1978. The Court in State ex rel Guste v. Simoni Heck & Associates, 331 So.2d 478, at p. 483 (La.1976), provides an explanation of a stipulation pour autrui:
"To the general rule that parties to a contract cannot stipulate but for themselves, there is an exception when one makes, in his own name, some advantage for a third person the condition or consideration of a commutative contract, or onerous donation. C.C. 1884, 1896. He, for whose benefit this advantage is stipulated, has an equitable action to enforce the stipulation, when he has signified his assent in the premises."
A stipulation pour autrui must be in writing and must clearly express the intent to benefit a third party. Fontenot v. Marquette *768 Casualty Co., 258 La. 671, 247 So.2d 572 (1971). Although a stipulation pour autrui may be for the benefit of "undetermined persons," those beneficiaries must be determinable on the day in which the agreement is to have effect for their benefit. Andrepont v. Acadia Drilling Co., 255 La. 347, 231 So.2d 347 (1969). It is unclear from the Rozier Act and the minutes of the Alexandria Zoning Commission minutes who would or could be the beneficiary of the proposed restrictions. From the face of the Rozier Act it would be impossible to identify which third party the Roziers intended to benefit. Additionally, in the Andrepont case cited above, there was an objectively identifiable legal relationship between the person entering into the contract and the person in whose favor the stipulation was made. In the case at bar, there is no legal relationship between the parties involved. For these reasons plaintiff may not avail itself of the concept of stipulation pour autrui.

e. Historical Preservation Restriction

Plaintiff argues in a motion for new trial and on appeal that alternatively, an historical preservation restriction was created pursuant to LSA-R.S. 33:4722.1(2). A close reading of these municipal zoning regulations indicates a preservation restriction is not an agreement unilaterally made by an owner of a single lot. It is a general plan of historical preservation of certain designated areas as determined by the city or governing body. LSA-R.S. 33:4721 grants authority to municipalities to enact these zoning ordinances. The Rozier Act does not create an historical preservation restriction because it is not pursuant to a general, uniform plan, nor was an historical preservation zoning restriction imposed on the area by the City of Alexandria.
For the reasons assigned, the trial court judgment sustaining the exception of no cause of action is affirmed at plaintiff-appellant's cost.
AFFIRMED.
NOTES
[*] Judge Ronald D. Cox of the Fifteenth Judicial District Court participated in this decision by appointment of the Louisiana Supreme Court.