MOORE, J.
*688 Karen Womack Hyde appeals a petitory judgment which found that her lot, in the city of Winnfield, measures only 54.3 × 104.4 feet, instead of the 74.3 × 104.4 feet stated in her credit sale deed. We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The plaintiff, Carolyn Hines, and defendant, Karen Womack Hyde, are next-door neighbors on West South Avenue in Winnfield: Ms. Hines to the west, Ms. Hyde to the east. Ms. Hines alleged that in early 2013, Ms. Hyde's family members started parking vehicles on the east side of her (Ms. Hines's) lot, built a fence on her lot, and threatened and "cussed" her when she tried to have her lot surveyed. Ms. Hines filed this suit, in August 2013, for possession of her lot, preliminary and permanent injunction, and damages.
Ms. Hyde reconvened, in March 2014, alleging that she actually owned the eastern strip of Ms. Hines's lot. In support, she cited her own credit sale deed, dated April 21, 1986, from W.R. "Bill" Roberts. This described her lot as starting 208.7 feet west of the SE corner of Lot 3, Old Town of Winnfield (this point of beginning, hereinafter "POB", is not in dispute), and then running 74.3 feet to the west. By this measure, she contended, she owned the strip of land that Ms. Hines had been using for years as a driveway.
Ms. Hines responded, first urging that by converting the matter to a petitory action, Ms. Hyde conceded that she (Ms. Hines) had been in physical possession of the contested strip. She then alleged that an ancestor in title, Olin Mathieson Chemical Corp., owned both lots prior to 1961. In May 1961, by separate acts, Olin sold both tracts to someone named James Scales. One of these acts described the eastern lot (now belonging to Ms. Hyde) as starting 208.7 feet west of the POB and the running 54.4 feet to the west. The other described the western lot (now belonging to Ms. Hines) as starting 263.1 feet west of the POB (note, 208.7 + 54.4 = 263.1 feet) and running west 54.4 feet. In 1979, Scales's heirs sold both tracts to Roberts, with both lots as described in the 1961 conveyances. In December 1984, Roberts sold the western lot to Ms. Hines and her husband; however, the property description said it began 283 feet west of the POB, instead of the 263.1 stated in the prior acts, and ran 54.4 feet to the west. Ms. Hines attached a 2013 survey showing that if her boundary line was that far over, it would run through a brick apartment house on the west side of her lot. Ms. Hines conceded that in 1986, Roberts sold the eastern lot to Ms. Hyde, described as starting 208.7 feet west of the POB and running 74.3 feet to the west. She contended, however, that an error had occurred in her property description, and that, at any rate, she had exercised possession of her lot for over 30 years.[1]
*689 Ms. Hines then filed a motion for summary judgment. She reiterated all the facts of her earlier pleadings, and argued that the documents showed that the original owners, Olin and Roberts, owned two adjacent lots, each with a 54.4-foot frontage; however, when Roberts conveyed the east tract to Ms. Hyde, he erroneously listed a 74.3-foot frontage. Ms. Hines argued that under La. C.C. art. 532, her deed from the common ancestor, Roberts, came first, so it took precedence.
Ms. Hyde opposed the motion. She attached a boundary agreement from May 1984 in which the common ancestor, Roberts, settled his western boundary with his neighbor to the west, someone named Machen (LeMart's predecessor in title). This document described the east lot as starting 208.7 feet west of the POB, the west lot as starting 263.1 feet west of the POB, and Machen's lot as starting 316.15 feet west of the POB. By the agreement, Roberts and Machen declared they would fix the boundary, under La. C.C. art. 789, in accord with "markers on the ground," whereby Machen's lot was to start 337.4 feet west of the POB (21.25 feet farther west). Ms. Hyde also showed that in 2001, Machen's successor sold this tract to LeMart, by cash sale deed that used exactly the same description as in the boundary agreement, 337.4 feet west of the POB.
Ms. Hyde then filed her own motion for summary judgment. She contended that when Ms. Hines filed her petition, she did not have 30 years' uninterrupted possession of the contested strip. She disputed Ms. Hines's view that the boundary issue stemmed from "misunderstandings, or typos"; instead, in 1984, pursuant to the boundary agreement, Roberts, the common ancestor, owned 20 feet more frontage than had been described in his deeds from Olin. She argued that Roberts added the 20 feet to the eastern lot (Ms. Hyde), giving it a 74.3-foot frontage, while the western lot (Ms. Hines) still had the 54.5-foot frontage stated in her deed. Ms. Hyde suggested the real problem was between Ms. Hines and the LeMart lot.
ACTION OF THE DISTRICT COURT
The matter came for a hearing on the opposing motions for summary judgment in February 2017. The parties laid out their respective documents and argued. In written reasons for judgment, the court found that the deeds initially described both lots as having a 54.4-foot frontage. It then found that the boundary agreement actually resolved only a 1.35-foot strip, not the 19.9 feet claimed by Ms. Hyde. The court concluded that Ms. Hyde owns a 54.3-foot frontage to the east, and Ms. Hines owns a 54.4-foot frontage to the west, exactly as shown in the 2013 survey. The court rendered judgment to this effect.
Ms. Hyde filed a motion for new trial. At a hearing in July 2017, Ms. Hyde argued that the court had improperly used parol evidence to find that the boundary agreement was in error. Ms. Hines responded that after Roberts sold her the western lot, he could not sell Ms. Hyde a lot with a 74.3-foot frontage, because he no longer owned it. The court denied the new trial.
Ms. Hyde has appealed, raising two assignments of error.
DISCUSSION
By her first assignment of error, Ms. Hyde urges the court erred in granting Ms. Hines's motion for summary judgment, and in ruling that Ms. Hines owned a 54.4-foot frontage and Ms. Hyde, only a 54.3-foot frontage, "in contradiction of the deeds filed of public record." She concedes that prior to 1984, Roberts, the common ancestor, owned both lots, totaling 108.7 feet frontage; however, she contends, the *690 boundary agreement, in May 1984, moved Roberts's western boundary 20 feet to the west, giving him the extra 20 feet that he added to the east lot when he sold it to Ms. Hyde in 1986. She submits that that district court's reasons "went awry" of these public records, based on a mere "assumption." She contends that both she and Ms. Hines are third parties to the boundary agreement, La. C.C. art. 3343, and thus subject to what is written on that document, and to nothing else. She concludes that strict reliance on the public records shows that Roberts acquired the extra 20 feet by the boundary agreement in May 1984; Roberts sold it to her in April 1986, by credit sale deed that clearly gave her a 74.3-foot frontage; and the court committed legal error by finding that she owned anything less. By her second assignment of error, Ms. Hyde contends the court improperly relied on parol evidence to contradict the clear and unambiguous language of the boundary agreement. In support, she cites La. C.C. art. 1848, which prohibits the use of "testimonial or other evidence" to negate or vary the terms of an authentic act, and argues that parol evidence is expressly prohibited in a petitory action, Blevins v. Manufacturers Record Publ'g Co. , 235 La. 708, 105 So.2d 392 (1957). She concludes that once the parol evidence is disregarded, she has unquestioned title to property with a 74.3-foot frontage. She asks this court to reverse and render judgment to that effect.
Ms. Hines counters by listing the deeds in chronological order, and argues that the cash sale deed from Roberts to herself "is in error as to the point of beginning," as it differs from the 263.1-foot measurement used in the three prior deeds. She submits that Ms. Hyde's credit sale deed is erroneous for the same reason, and that Roberts conveyed more property to Ms. Hyde than he had title to. She also contends that moving her western boundary 20 feet to the west would be absurd, as the new boundary would run through the middle of LeMart's brick apartment house. She concludes that the only way to interpret these obviously erroneous documents is the way the district court did, and asks this court to affirm.
When the titles of the parties are traced to a common ancestor, he is presumed to be the previous owner. La. C.C. art. 532 ; La. C. C. P. art. 3653 ; Guess v. Gathings , 31,700 (La. App. 2 Cir. 2/24/99), 728 So.2d 1038. The summary judgment evidence plainly establishes that Roberts was the common ancestor and previous owner of both lots.
The parties may, by written agreement, determine the line of separation between their lands with or without reference to markers on the ground. La. C.C. art. 789 ; Longleaf Invs. LLC v. Cypress Black Bayou Recreation & Water Conserv. Dist. , 49,508 (La. App. 2 Cir. 2/26/15), 162 So.3d 479, writ denied , 2015-0619 (La. 5/22/15), 171 So.3d 251. The sale of a thing belonging to another does not convey ownership. La. C.C. art. 2452 ; J-W Operating Co. v. Olsen , 48,756 (La. App. 2 Cir. 1/15/14), 130 So.3d 1017, writ denied , 2014-0313 (La. 4/11/14), 137 So.3d 1217. Review of the grant of summary judgment is de novo. Olympia Minerals LLC v. HS Resources Inc. , 2013-2637 (La. 10/15/14), 171 So.3d 878.
We have closely examined the summary judgment evidence and agree that Ms. Hyde's credit sale deed gives her a 74.3-foot frontage. However, the chain of title from the common author shows that this was an error. From before 1961 until 1984, Olin Mathieson Chemical, and then Scales, and then Roberts, owned the two adjacent lots on West South Avenue: the east lot started 208.7 feet west of the POB, the west lot started 263.1 feet west of the POB, and each had a 54.4-foot frontage. In *691 December 1984, however, Roberts sold the west lot to Ms. Hines, starting 283 feet west of the POB and running 54.4 feet west. When he later sold the east lot to Ms. Hyde, with a stated frontage of 74.3 feet, he had sold a total of 128.7 feet frontage, or 20 feet more than he had acquired from Scales. The sale of more property than he owned obviously could not convey ownership. La. C.C. art. 2452.
Ms. Hyde contends that the boundary agreement between Roberts and his neighbor to the west, Machen, conveyed this additional 20 feet of frontage to Roberts. However, this agreement states that Roberts's east lot starts 208.7 feet from the POB, his west lot starts 263.1 feet from the POB, and both have a frontage of 54.4 feet; this plainly sets his west boundary at 317.5 feet from the POB. The dispute was that Machen's title described his tract as starting 316.15 feet west of the POB. The boundary agreement was plainly intended to resolve the 1.35-foot discrepancy between their property descriptions. Inexplicably, the attached plat stated that Machen's property started 337.4 feet west of the POB, a value not expressed in the actual agreement, not included in the diagram, and not supported by the prior deeds. It appears to be a mathematical error for 317.4 feet, but was reproduced in Roberts's subsequent conveyances to Ms. Hines and Ms. Hyde. The fact that this was erroneous is confirmed by the 2013 survey, which precisely shows LeMart's lot starting 317.4 feet from the POB. In short, the boundary agreement does not provide as Ms. Hyde contends. This assignment of error lacks merit.
By her second assignment of error, Ms. Hyde urges the district court erred in relying on parol evidence. Testimonial or other evidence may not be admitted to negate or vary the contents of an authentic act. La. C.C. art. 1848. However, testimonial proof may be used against a writing to show error, fraud or duress. Peterson v. Schimek , 98-1712 (La. 3/2/99), 729 So.2d 1024 ; Marsh Cattle Farms v. Vining , 30,156 (La. App. 2 Cir. 1/23/98), 707 So.2d 111, writ denied , 98-0478 (La. 4/24/98), 717 So.2d 1167. In view of the 20-foot error that arose in the boundary agreement, and was replicated in the cash sale to Ms. Hines and the credit sale to Ms. Hyde, the district court did not commit legal error in referring to the earlier deeds, with their accurate property descriptions. The case of Blevins v. Manufacturers Record , supra , relied on by Ms. Hyde, merely applies the public records doctrine established in McDuffie v. Walker , 125 La. 152, 51 So. 100 (1909). It does not alter the admissibility of testimonial or other evidence to show error, fraud or duress. This assignment of error lacks merit.
CONCLUSION
For the reasons expressed, the judgment is affirmed. All costs are to be paid by the defendant, Karen Denise Womack Hyde.
AFFIRMED .

Ms. Hines also filed a peremptory exception of nonjoinder, which the district court granted ordering Ms. Hyde to join the owner of the apartment house, LeMart Properties, as a defendant. The record does not show that Ms. Hyde ever complied, but neither side has mentioned this on appeal. The court can "determine whether the action should proceed among the parties before it," La. C. C. P. art. 642, Gibbs v. Magnolia Living Ctr., Inc. , 38,184 (La. App. 2 Cir. 4/7/04), 870 So.2d 1111, writ denied , 2004-1148 (La. 7/2/04), 877 So.2d 146. In light of the district court's discretion under Art. 642, the fact that nobody objected to Ms. Hyde's failure to comply, and the ultimate result, not impinging on LeMart's property, we pretermit any consideration of nonjoinder.