YELVERTON, Judge.
This appeal arose from a judgment in a declaratory action seeking the interpretation and effect to be given an authentic act styled “Correction Deed”, dated May 21, 1985, and executed by John Carroll Bourgeois, Jr., and his wife, Vickie Arceneaux Bourgeois, and Belin Landry, Jr. The act purported to convey a mineral interest from the Bourgeoises to Landry. The district court after a trial, finding that the instrument did not meet the formal requirements of either a correction instrument or a sale, and that it could not be treated as a compromise, declared it a nullity, and ordered it erased from the public records. Landry appealed. We reverse. We find that the act was a valid contract between the parties translative of title, and that it should be given effect.
FACTS
Parol evidence was freely admitted at the trial and the facts were fully explored. On May 27, 1983, John Carroll Bourgeois, Jr., and Belin Landry, Jr., entered into a “Buy and Sales Agreement”. Bourgeois was to exchange his 74.121 acres of land in Jefferson Davis Parish for 18 acres of land owned by Landry in Calcasieu Parish, with some additional cash and credit consideration to be paid by Landry on account of the difference in the values of the respective tracts. At the time of the “Buy and Sales Agreement”, the 74.121 acre tract was burdened with a mineral servitude that was due to expire on November 21, 1983. Landry insisted on getting the minerals, and would not agree to the exchange otherwise. The value negotiations leading to the exchange reflected separate consideration for the minerals. Because the servitude was going to expire soon, Landry expected to get 100% of the mineral servitude in the exchange, or soon thereafter.
The 74.121 acre tract was a part of a mineral servitude affecting some 3,720 acres in Jefferson Davis Parish. This was a family servitude established by John Carroll Bourgeois, Jr., and the other family members by an act of partition executed on November 21, 1973. Bourgeois owned a 3/40ths interest in the family servitude, which meant that he owned only a 3/40ths interest in the minerals attributable to the 74.121 acre tract, when the buy and sell agreement was signed.
Had this servitude expired on November 21, 1983, Bourgeois could have conveyed to Landry 100% of the minerals attributable to the 74.121 acres. Before the expiration date, however, Bourgeois and the co-heirs went to Jennings and executed and recorded a Reinscription of Mineral Interest and an Act Interrupting the Running of Prescription. This had the effect of renewing the family mineral servitude for another 10 years.
The Act of Exchange and Vendor’s Lien was executed by Bourgeois and Landry on December 27, 1983. For the 74.121 acres, Landry exchanged his 18 acres, paid Bourgeois $11,715 in cash, and gave Bourgeois his promissory note for $18,285 payable at the rate of $160.46/month for 30 years. The total consideration, as recited in the exchange deed, amounted to $110,000 for the 74.121 acres. As agreed, Bourgeois conveyed to Landry in this exchange all of his minerals in the 74.121 acres.
Because of the reinscription of the servitude, Landry acquired only a 3/40ths interest in the minerals, which was the propor *38 tional amount of the servitude, attributable to the 74.121 acres, that Bourgeois owned in the servitude affecting the whole of the family partitioned property. As we will explain later in this opinion, this court finds that this result was contrary to the intention of the parties. Both parties understood that Landry expected to get 100% of the minerals, that this was part of the evaluation placed on the property for the exchange, and that Landry would not have agreed to the exchange unless he was going to get 100% of the minerals.
The problem was mentioned from time to time thereafter, but the decision to remedy the problem was not made until a year and a half later. Bourgeois, needing money for a vacation, asked Landry if he would prepay the balance on the mortgage note. Landry agreed, on condition that Bourgeois convey to him a mineral interest equivalent to what he would have received in 1983 if everything had gone according to plan. When Bourgeois agreed to this, Landry had his lawyer draw up the papers. On May 21, 1985, Bourgeois and his wife Vickie went to the lawyer’s office. They picked up the instrument that had been prepared by the lawyer, and took it to lunch with them to read. After lunch they brought it back to the lawyer, signed it, got their money, and left.
The instrument that they signed was styled “Correction Deed”, and it contained the following language:
In the above referred to Exchange Deed no mention was made of the execution by John Carroll Bourgeois, Jr. of a Reinscription of Mineral Interest dated June 7, 1983 recorded in Conveyance Book 554 at page 583, records of Jefferson Davis Parish, Louisiana, and an Ac-knowledgement Interrupting Mineral Prescription dated November 18,1983 recorded in Conveyance Book 564 at page 107, records of Jefferson Davis Parish, Louisiana, when as a matter of fact it was the intention of both parties that John Carroll Bourgeois, Jr. convey to Belin Landry, Jr. all of his oil, gas and other minerals and mineral royalties in and under the property conveyed to Belin Landry, Jr., together with all oil, gas and other minerals and mineral royalties wherever located owned by John Carroll Bourgeois, Jr., attributable to his ownership of the above described 74.121 acres, through his execution of the above referred to Reinscription of Mineral Interest and Acknowledgement Interrupting Mineral Prescription.
That in view of the foregoing and for the same consideration originally recited, the parties have agreed to reform and correct the aforementioned deed so as to convey and John Carroll Bourgeois, Jr. and Vickie Arceneaux Bourgeois do hereby grant, bargain and sell unto Belin Landry, Jr. all minerals in and under the land conveyed to him by the Exchange Deed recorded in Conveyance Book 566 at page 618, records of Jefferson Davis Parish, Louisiana, together with all minerals or mineral rights including but not limited to oil, gas and other mineral royalties wherever located, acquired by, acknowledged as owned by or reinscribed to John Carroll Bourgeois, Jr. by that certain Reinscription of Mineral Interest recorded in Conveyance Book 554 at page 583, records of Jefferson Davis Parish, Louisiana and that Acknowledgement Interrupting Mineral Prescription recorded in Conveyance Book 564 at page 107, records of Jefferson Davis Parish, Louisiana, attributable to the ownership of John Carroll Bourgeois, Jr. of the 74.121 acres described above.
In 1987 Bourgeois and his wife filed this suit for a declaratory judgment. They alleged that the “Correction Deed” was intended to reform and correct the exchange deed regarding the minerals, but that the correction deed erred. They alleged that what was intended was only the conveyance to Landry of such mineral title in the 74.121 acres which Landry might, subsequent to the date of the “Correction Deed”, acquire in that property only. Landry answered the suit praying for judgment in his favor declaring that the Bourgeoises by the “Correction Deed” of May 21, 1985, conveyed to him a right, title and interest in the family servitude equal to what he would have owned had he acquired 100% of *39 the minerals attributable to his ownership of the 74.121 acres.
At the trial of the case, the Bourgeoises’ testimony took an entirely different tack from their pleadings: they testified that all they thought they were signing was a release of the mortgage then being paid off by Landry. Landry insisted at the trial, as he had throughout, that the “Correction Deed” was the means employed by the parties to give to him John Carroll Bourgeois, Jr.’s, interest in the family servitude which, attributable to the 74.121 acres, would be the equivalent of 100% of the minerals in that tract — or what Landry paid to receive.
In written reasons for judgment the trial judge, commenting on the parties’ positions, said:
To say the least, the parties’ positions as to their intentions in executing the correction deed are poles apart and cannot be reconciled from the evidence presented at trial. In fact, this case has been most troubling and difficult to decide, primarily because the court finds that neither party has been completely candid and truthful with the court.
The trial judge went on to reject the testimony of the Bourgeoises that they thought they were only signing a release of mortgage. Nevertheless, the trial judge found that the “Correction Deed” was neither a correction instrument nor a sale, and that it could not be treated as a compromise. It was not a correction instrument because the property conveyed in the “Correction Deed” was other property from that described in the original conveyance. It was not a sale because there was no price stated. It could not be a transaction or compromise because that affirmative defense was not pleaded. Unable to reconcile the testimony of the parties as to their intentions, and believing itself unable to give effect to this authentic act because of certain formal strictures in contract and procedural law, the trial court simply declared the “Correction Deed” null and void, and ordered it erased from the public records.
Our decision to reverse is based on manifest error as to fact. Interpretation of a contract is the determination of the common intent of the parties. La.C.C. art. 2045. There are two questions of fact involved in the case, both having to do with the intention of the parties. The first is their intent in the 1983 exchange. The second is their intent in the confection of the 1985 “Correction Deed”.
INTENT: THE 1983 EXCHANGE
We find, from a thorough study of the testimony, that there are no conflicts regarding what the parties were thinking going into the 1983 exchange. Vickie Bourgeois testified that she knew before the exchange was executed that Landry wanted 100% of the minerals. Landry testified he thought he was going to get 100% of the minerals. This would have happened, had Bourgeois not effected a rein-scription. Landry testified that when he signed the exchange deed he did not know the servitude had been extended. Bourgeois testified that when he signed the reinscription he did not realize this would effectually keep Landry from getting the minerals for another ten years. This was Bourgeois’ testimony:
Q Did you at any time during the discussions with Mr. Landry indicate that you would be giving up the mineral rights when the 10 years was up?
A Yes, sir, I did tell him he would get them.
[[Image here]]
A He [Landry] had asked me if the lease on — the reinscription that I was fixing to sign, did it have anything to do with the 74 acres.
[[Image here]]
Q And he specifically asked you if that would affect the minerals on the 74 acres he agreed to buy from you?
A Yes, sir, he did.
Q You told him no?
A Yes, sir.
Q And you subsequently went to Jennings and signed the reinscription?
A Yes, sir. I did.
*40 Landry’s lawyer at the closing of the exchange told him he could not give him a title opinion about the minerals. When they executed the exchange, Landry thought and Bourgeois believed that Landry would be getting 100% of the minerals on the 74.121 acres.
There is an error in the “Correction Deed” relating to the intent of the parties at the time of the 1983 exchange. This error is the recitation that it was then (i.e., in 1983) the intent that Bourgeois convey Landry an interest in other minerals wherever located attributable to his ownership of the 74.121 acres. That was not then their intention. The intention was to give to Landry what Bourgeois owned in the minerals in the 74.121 acres, but the parties mutually erred in believing that what Bourgeois could convey was 100% of these minerals.
INTENT: THE 1985 “CORRECTION DEED”
Testimony as to the intention of the parties when they signed the “Correction Deed” is what the trial judge found irreconcilable. We agree, and we also agree with the trial court’s rejection of the Bour-geoises’ explanation of why they signed it. This explanation — that they thought they were signing merely a release of mortgage — made its first appearance at the trial, never having been pleaded in the original or any amending petition. It is an explanation inconsistent with the circumstances under which the instrument was executed, as well as with the intelligence of the signers. It is evident that the Bour-geoises, when they filed this suit in 1987, were simply trying to avoid the consequences of a contract, executed in 1985, to which they had given their free consent.
We have found that the parties intended in 1983 to include in the exchange, for a negotiated price, 100% of the minerals in the 74.121 acres. Through error, this was not done. As a result of the reinscription, it could not be done. Bourgeois was unable to carry out the agreement according to its terms. To accomplish the next best thing, the parties agreed in 1985 to the “Correction Deed”. If this contract needs a designation, we can call it innominate. La.C.C. art. 1914.
This was an onerous contract made for the performance of a natural obligation. La.C.C. arts. 1909 and 1761. A natural obligation arises from the circumstances in which the law implies a particular moral duty to render a performance. La.C.C. art. 1760. A natural obligation is not enforceable by judicial action. Nevertheless, whatever has been freely performed in compliance with a natural obligation may not be reclaimed. La.C.C. art. 1761. The performance originally contemplated, the conveyance of 100% of the minerals in the 74.121 acre tract, was rendered judicially unenforceable by the reinscription. Performance as originally intended was in fact impossible. Because they recognized an obligation, however, the Bourgeoises freely executed the 1985 contract which they called a “Correction Deed”. The contract was an act translative of title.
For these reasons, the judgment of the trial court, declaring the "Correction Deed” null and void, and ordering it erased from the public records, is reversed and set aside. Judgment is rendered declaring the conveyance valid, and ordering it enforced according to its terms. Costs here and below will be paid by John Carroll and Vickie Bourgeois.
REVERSED AND RENDERED.
KNOLL, J., dissents and assigns reasons.