993 So.2d 222 (2008)
SEMO, INC.
v.
BOARD OF COMMISSIONERS FOR the ATCHAFALAYA BASIN LEVEE DISTRICT and Board of Commissioners for the South Lafourche Levee District.
No. 2007 CA 2571.
Court of Appeal of Louisiana, First Circuit.
June 6, 2008.
*224 Joseph B. Dupont, Jr., Plaquemine, LA, for Defendant/Appellant, Board of Commissioners for the Atchafalaya Basin Levee District.
Kent A. Lambert, New Orleans, LA, for Plaintiff/Appellee, SEMO, Inc.
Ray A. Collins, Larose, LA, for Defendant/Appellee, Board of Commissioners for the South Lafourche Levee District.
Charles F. Perry, Baton Rouge, LA, for Defendant/Appellee, State of Louisiana.
Before CARTER, C.J., PETTIGREW and WELCH, JJ.
CARTER, C.J.
This is a concursus proceeding brought by SEMO, Inc., involving royalties owed under a mineral lease executed in 1989 by the Board of Commissioners for the Atchafalaya Basin Levee District ("Atchafalaya") and SEMO. The trial court determined that due to particular legislation, the mineral royalties were owed to the South Lafourche Levee District ("South Lafourche"). Atchafalaya now appeals.

FACTS AND PROCEDURAL HISTORY
Atchafalaya was created by Act 97 of 1890. In 1938, the State of Louisiana conveyed to Atchafalaya certain property in Lafourche Parish, which was within Atchafalaya's territorial jurisdiction. Atchafalaya sold the property to a private owner in 1953, reserving all mineral rights.
By Act 20 of 1968, the Louisiana legislature created a new levee district now known as South Lafourche.[1] In so doing, the legislature recognized that a portion of Atchafalaya's territory was located with the territory of South Lafourche and that the districts shared overlapping jurisdiction of that territory.
In 1989, Atchafalaya entered into a mineral lease with SEMO covering the property in Lafourche Parish. Under the lease, Atchafalaya was entitled to specified royalties.
By Act 781 of 1997, the Louisiana legislature enacted LSA-R.S. 38:291 P(3), which provides, in pertinent part:
All lands, rights-of-way, servitudes, and revenues therefrom which are located within the South Lafourche Levee District and which are owned or held by the Atchafalaya Basin Levee District on August *225 15, 1997 are hereby granted, conveyed, transferred, and delivered to the South Lafourche Levee District without the necessity of any other act or instrument of grant, conveyance, transfer, or delivery.
South Lafourche apprised SEMO of the newly enacted legislation, and formally demanded that SEMO begin paying royalties owed under the lease to it, not Atchafalaya. SEMO made one payment of $12,139.91 to South Lafourche. Thereafter, Atchafalaya contested the legal position of South Lafourche and the constitutionality of certain legislative acts, including Act 781 of 1997, and demanded that SEMO pay the royalties to it, not South Lafourche.
SEMO instituted this concursus proceeding in 1997, naming Atchafalaya and South Lafourche as defendants, seeking to have them assert their claims contradictorily. Thereafter, SEMO deposited the royalties owed under the lease into the registry of the court. Atchafalaya and South Lafourche each asserted their claims, which included Atchafalaya's constitutional challenges to Act 781 and also the Act that created South Lafourche. The trial court rendered judgment in 2007, declaring all of the challenged Acts to be constitutional, and ordered the Clerk of Court to disburse the funds paid into the registry of the court, together with accrued interest to South Lafourche.[2] Atchafalaya now appeals.

DISCUSSION
Any right that South Lafourche has to the royalties is based on LSA-R.S. 38:291 P(3), which transferred from Atchafalaya to South Lafourche "[a]ll lands, rights-of-way, servitudes, and revenues therefrom" that are located with South Lafourche's territorial jurisdiction. A threshold issue is whether the entitlement to royalties under the mineral lease is included in the categories of "[a]ll lands, rights-of-way, servitudes, and revenues therefrom" and was included in the transfer.
We are guided in our interpretation of LSA-R.S. 38:291 P(3) by well settled principles of statutory construction. The interpretation of a statute begins with the language of the statute itself. When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written, and no further interpretation may be made in search of the intent of the legislature. Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners, 04-1674 (La.2/4/05), 894 So.2d 325, 330-331.
Pursuant to the standard rules for statutory construction developed in the jurisprudence: 1) it is presumed that every provision of law was intended to serve some useful purpose; 2) it is not presumed that the lawmaker intended for any part of a law to be meaningless; 3) the lawmaker is presumed to have enacted the law with full knowledge of all other laws pertaining to the same subject matter; 4) it is the duty of the courts to interpret a provision of law which harmonizes and reconciles it with other provisions pertaining to the same subject matter; and 5) when a law is susceptible to two or more interpretations, that which affords a reasonable and practical effect to the entire act is preferred to one that renders part of the act nugatory. Additionally, rendering the whole, or a part, of a law meaningless is the last option available to a court when it interprets *226 a law. Where a statute is ambiguous and susceptible of two constructions, the courts will give that construction which best comports with the principles of reason, justice, and convenience, for it is to be presumed that the legislature intended such exceptions to its language as would avoid its leading to injustice, oppression, or absurd consequences. Bd. of Trustees of State Employees Group Benefits Program v. St. Landry Parish Bd., 02-0393 (La.App. 1 Cir. 2/14/03), 844 So.2d 90, 97, writ denied, 03-0770 (La.5/9/03), 843 So.2d 404.
Under Louisiana law, the ownership of land does not include ownership of oil, gas, and other minerals occurring naturally in liquid or gaseous form. Rather, the landowner has the exclusive right to explore and develop his property for the production of such minerals and to reduce them to possession and ownership. LSA-R.S. 31:6. A reservation of such minerals was not a reservation of the minerals themselves, as Atchafalaya could not reserve something it did not own. Richard v. Hall, 03-1488 (La.4/23/04), 874 So.2d 131, 146. Rather, Atchafalaya reserved to itself the right to explore and develop the property for the production of such minerals, as provided by LSA-R.S. 31:15, which right created a servitude. Id. When Atchafalaya entered into the mineral lease with SEMO, ownership of mineral rights remained with Atchafalaya. It was only the operating rights and the right to share in production that were transferred to SEMO. See Wall v. Leger, 402 So.2d 704, 709 (La.App. 1 Cir.1981). Thus, the mineral lease with SEMO did not affect Atchafalaya's servitude.
When the legislature enacted LSA-R.S. 38:291 P(3), Atchafalaya owned (or held) a servitude consisting of the right to explore and produce minerals burdening the property. That servitude was clearly included in the items transferred from Atchafalaya to South Lafourche pursuant to LSA-R.S. 38:291 P(3). As Atchafalaya's right of mineral servitude was transferred to South Lafourche, so too went Atchafalaya's right to obtain revenues in the form of mineral royalties attributable to that servitude. See LSA-R.S. 38:291 P(3) (transferring "servitudes, and revenues therefrom"). We now turn to Atchafalaya's constitutional arguments for invalidating the transfer.
The Louisiana Supreme Court has set forth the principles for review of constitutionality as follows:
As a general rule, statutes are presumed to be constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality. Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the legislature, the legislature may enact any legislation that the constitution does not prohibit. As a result, a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must demonstrate clearly and convincingly that it was the constitutional aim of that provision to deny the legislature the power to enact the statute in question. A constitutional limitation on the legislative power may be either express or implied.
Finally, because it is presumed that the legislature acts within its constitutional authority in enacting legislation, this court must construe a statute so as to preserve its constitutionality when it is reasonable to do so. In other words, if a statute is susceptible of two constructions, one of which would render it unconstitutional, or raise grave constitutional questions, the court will adopt the *227 interpretation of the statute which, without doing violence to its language, will maintain its constitutionality. Nevertheless, the constitution is the supreme law of this state, to which all legislative acts must yield. When a statute conflicts with a constitutional provision, the statute must fall. (Citations omitted).
City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 05-2548 (La.10/1/07), 986 So.2d 1, 12-13.
Atchafalaya has challenged the constitutionality of Act 20 of 1968, which created South Lafourche, contending it authorized substantive taxation in excess of the constitutional maximum, and also that the discriminatory taxation scheme it created violated the equal protection clauses of both the state and federal constitutions. If South Lafourche was not constitutionally created, it did not have legal existence and the legislature could not transfer anything to it.
In support of its arguments, Atchafalaya cites the case of Bd. of Comm. of the North Lafourche Conservation, Levee and Drainage District v. Bd. Of Comm. Of the Atchafalaya Basin Levee District, 95-1353 (La.1/16/96), 666 So.2d 636. Therein, the Louisiana Supreme Court found Act 876 of 1992, which created the North Lafourche Conservation, Levee and Drainage District and is strikingly similar to the language of Act 20 of 1968, to be unconstitutional. The court determined that Act 876 of 1992 subjected one geographical area to the territorial jurisdiction of two separate levee districts, each serving the same exact purpose, which is prohibited by Art. VI, § 38(A)(1) of the Louisiana Constitution of 1974. Bd. of Comm. of the North Lafourche Conservation, Levee and Drainage District, 666 So.2d at 640.
At issue here is the 1968 creation of South Lafourche. Article VI, § 38(A) of the 1974 Constitution provides that "[l]evee districts as organized and constituted on January 1, 1974 shall continue to exist." (Emphasis added.) Article VI, § 38's provisions for the creation of new levee districts are not applicable to South Lafourche. The organization of South Lafourche was specifically sanctioned by Article VI, § 38(A) of the 1974 Constitution. We find no merit to Atchafalaya's arguments.
Atchafalaya has also challenged the constitutionality of Act 781 of 1997, which enacted LSA-R.S. 38:291 P(3). Atchafalaya first contends that Act 781 is unconstitutional and unenforceable in that it violates the constitutional prohibition against the donation or lending of public funds. It next argues that Act 781 is unconstitutional and unenforceable in that it impairs existing obligations and contracts.
A levee board is a creature or agency of the state brought into existence for the purpose of discharging the state's duties of flood protection. Accordingly, as between the state and its agency, property is placed under the control of the agency for supervision and administration, the land for all practical intents and purposes being still the property of the state. Bd. of Comm. of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 288-289 (La.1986). These legal principles apply here, notwithstanding the fact that the state executed a written document transferring the Lafourche property from the state to Atchafalaya. Further, the supreme court has noted that "there is nothing in the proceedings of the [1974 constitutional] convention to indicate the delegates intended to elevate the statutorily defined powers of levee districts relative to ownership of property to a constitutionally protected level." Board of Commissioners *228 of Orleans Levee District, 496 So.2d at 291.
In discharging its duties of flood protection, the legislature is constitutionally authorized to create, consolidate, divide, or merge levee districts. LSA-Const. 1974, Art. VI, § 38(A). The Legislature's transfer from one state agency to another of a servitude under a levee district's control and administration for flood purposes constitutes a reorganization by the state of its own property rather than a taking of property from a separate person or entity. Cf Bd. of Comm. of Orleans Levee District, 496 So.2d at 288-289. It does not violate the constitutional prohibition against donations of state property.
Neither did Act 781 of 1997, which enacted LSA-R.S. 38:291 P(3), unconstitutionally impair the obligations of contracts. The threshold inquiry in such analysis is whether the statute has, in fact, operated as a substantial impairment of a contractual relationship. If an impairment is found, the reviewing court next determines whether the impairment is of constitutional dimension. Bd. of Comm. of Orleans Levee District, 496 So.2d at 292. However, an entity whose rights are subject to state restriction cannot remove those rights from the power of the state by making a contract about them. Hudson County Water Co. v. McCarter, 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908).
Even if we were to determine that the enactment of LSA-R.S. 38:291 P(3) operated as a substantial impairment of Atchafalaya's contractual rights, we must conclude that the statutory enactment is justified by a significant and legitimate public purpose and is a valid exercise of the state's police power. The state's duty to protect citizens from damage by flood is inherent within its police power, which cannot be irrevocably delegated or surrendered except by specific constitutional limitation. Bd. of Comm. of Orleans Levee District, 496 So.2d at 289.
Here, the legislature modified its delegation of police power over territory that had been within the jurisdiction of both Atchafalaya and South Lafourche. The legislation affecting the transfer from Atchafalaya to South Lafourche is addressed to a legitimate end (organizing levee districts) and the measures taken are reasonable and appropriate to that end (funding the levee district providing flood control for that geographical area). Thus, Act 781 of 1997, which enacted LSA-R.S. 38:291 P(3), is not unconstitutional for the reasons urged by Atchafalaya.

CONCLUSION
Considering the foregoing, the judgment appealed from is affirmed. The disputed royalty payments were properly paid from the registry of the trial court to South Lafourche. Costs of this appeal in the amount of $2,579.55 are assessed to the Atchafalaya Basin Levee District.
AFFIRMED.
NOTES
[1] Act 20 of 1968 created the South Louisiana Tidal Water Control Levee District. The legislature changed the district's name to the South Lafourche Levee District by Act 225 of 1978.
[2] Pursuant to the trial court's judgment, $372,665.62 was disbursed from the registry of the court to South Lafourche.