STATE OF LOUISIANA
COURT OF APPEAL
FIRST CIRCUIT

DOCKET NUMBER
2021 CA 0561

SUCCESSION OF LUCILLE WATTS PATIN,
PAMELA SUE PATIN QUANTZ, CHARLEEN PATIN TAYLOR,
REBEL KELLEY CAPLINGER, DENIS CURTIN KELLEY, II,
DORCAS MARIE KELLEY, KERRY WATTS KELLEY,
AND PATIN-KELLEY, LLC

VERSUS

BREAZEALE, SACHSE & WILSON, L.L.P., DAVID M.
CHARLTON, AND XYZ INSURANCE COMPANY ("XYZ")

**MAY 0 9 2022**

Decision Rendered: _____

\* \* \* \* \*

On Appeal from the
19th Judicial District Court
East Baton Rouge Parish, Louisiana
Trial Court No. 666,011

The Honorable Timothy E. Kelley, Judge Presiding

\* \* \* \* \*

Scott Webre
Whitney S. Ikerd
Lafayette, Louisiana

Victor L. Marcello
Baton Rouge, Louisiana

Attorneys for Plaintiffs-Appellants,
Succession of Lucille Watts Patin,
Pamela Sue Patin Quantz, Charleen
Patin Taylor, Rebel Kelley Caplinger,
Denis Curtin Kelley, II, Dorcas Marie
Kelley, Kerry Watts Kelley, and
Patin-Kelley, LLC

Heather S. Duplantis
Kevin W. Welsh
Baton Rouge, Louisiana

Attorneys for Defendants-Appellees,
Breazeale, Sachse & Wilson, LLP and
David M. Charlton

Melissa M. Lessell
Beverly L. Delaune
New Orleans, Louisiana

Attorneys for Defendants-Appellees,
Endurance American Specialty
Insurance, Scottsdale Insurance
Company, and Aspen Specialty
Insurance

**BEFORE: McDONALD, McCLENDON,
PENZATO, LANIER, and WOLFE, JJ.**

McClendon, J. concurs in part and dissents in part and assigns reasons. (by jmm)

Wolfe, J. dissents and assigns reasons

**McDONALD, J.**

In this legal malpractice action, plaintiffs appeal a judgment granting an exception of no cause of action filed by the defendant attorneys and their insurers, dismissing plaintiffs' claims with prejudice, and denying plaintiffs' motion for leave to file amended pleadings beyond their second supplemental and amended petition for damages. After review, we reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Lucille Watts Patin retained attorney David M. Charlton of the law firm, Breazeale, Sachse & Wilson, LLP (BSW), to form a limited liability company known as Patin-Kelley, LLC (PKLLC). Mr. Charlton also handled Ms. Patin's legal matters related to the management of her property and the planning of her estate. As part of that work, Mr. Charlton drafted documents whereby Ms. Patin sold her 17/18[th] ownership interest – both surface and mineral rights – in an approximate 382-acre tract of land in Pointe Coupee Parish (the property) to PKLLC. In exchange for the property, Ms. Patin received a 97% membership interest in PKLLC.[1] The sale between Ms. Patin and PKLLC was recorded in the conveyance records on December 28, 1998.

In 2006, Ms. Patin and PKLLC executed an Act of Correction to the 1998 sale, because it was discovered that the 1998 sale did not include a mineral servitude in Ms. Patin's favor, even though the parties had intended that Ms. Patin reserve all of the mineral rights when she sold the property to PKLLC.[2] Mr. Charlton prepared the Act of Correction to correct the error in the 1998 act of sale. The Act of Correction contained language reserving a mineral servitude on the property to Ms. Patin and stating that PKLLC disclaimed any and all ownership to those mineral rights. Two witnesses signed the Act of Correction, and Ms. Patin signed on her own behalf, as well as in her capacity as the PKLLC's managing member. Mr. Charlton notarized the Act of Correction, and it was recorded in the conveyance records.

---

[1] It is undisputed that, at some point, Ms. Patin became the owner of 100% of PKLLC.

[2] In the 2006 Act of Correction, Ms. Patin reserved "all minerals in, on and under, and all mineral rights pertaining to" the property sold to PKLLC. As discussed later herein, an owner's sale of land with a reservation of mineral rights creates a mineral servitude. *See Ohio Oil Co. v. Ferguson,* 213 La. 183, 34 So.2d 746, 752 (1946); *Indigo Minerals, LLC v. Pardee Minerals, LLC,* 45,160 (La. App. 2 Cir. 5/28/10), 37 So.3d 1122, 1128, writs denied, 10-1669, 10-1677 (La. 10/8/10), 46 So.3d 1274; *SEMO, Inc. v. Bd. Of Com'rs for Atchafalaya Basin Levee Dist.,* 07-2571 (La. App. 1 Cir. 6/6/08), 993 So.2d 222, 226.

2

Ms. Patin died testate approximately six years later on March 13, 2012, leaving six legatees: Pamela Sue Patin Quantz, Charleen Patin Taylor, Rebel Kelley Caplinger, Denis Curtin Kelley, II, Dorcas Marie Kelley, and Kerry Watts Kelley (the Patin legatees). In her testament, Ms. Patin appointed Ms. Quantz, Ms. Taylor, and Ms. Caplinger as co-executrixes of her estate. Later, Ms. Caplinger was appointed as PKLLC's manager. Mr. Charlton was retained to serve as legal counsel for Ms. Patin's succession and PKLLC.

In 2015, the Patin legatees consulted Mr. Charlton regarding a proposed sale of the property to Steven W. Kent, II, and Jana Spillman Kent. The Patin legatees communicated to Mr. Charlton that they specifically wanted to protect the mineral servitude previously reserved by Ms. Patin and to extend it for 10 years. After Mr. Charlton participated in drafting and/or reviewing the proposed sale documents, he assured the Patin legatees that those documents did retain their mineral servitude for 10 years. Ms. Patin's succession and PKLLC sold the property to the Kents on February 11, 2015, and the sale was recorded in the conveyance records the next day.

In late 2017, multiple oil and gas companies approached the Patin legatees with interest in leasing the property for exploration; however, after conducting a title search, these entities "backed off" and told the Patin legatees that the mineral servitude had not been extended for 10 years after the 2015 sale of the property to the Kents and would soon prescribe from nonuse. The Patin legatees sought counsel from Mr. Charlton, who confirmed that the 2015 sale did not extend the mineral servitude for 10 years and the servitude would extinguish in 2019, if not interrupted by proper oil and gas explorations before that time.[3] According to the Patin legatees, Mr. Charlton did not thereafter respond to them about the mineral servitude ownership.

On February 5, 2018, the Patin legatees and PKLLC (the Patin plaintiffs) filed this legal malpractice suit against Mr. Charlton and BSW, alleging that Mr. Charlton had breached his obligation to properly handle their legal matters and that BSW was vicariously liable. They further alleged that Mr. Charlton had not taken appropriate steps to preserve their

---

[3] A mineral servitude is extinguished by prescription resulting from 10 years' nonuse. La. R.S. 31:27. Prescription of nonuse commences from the date on which the mineral servitude is created but is interrupted by good faith operations for the discovery and production of minerals. *See* La. R.S. 31:28; 31:29; *Indigo Minerals, LLC*, 37 So.3d at 1128. The Patin legatees and PKLLC allege Mr. Charlton said the servitude would prescribe in 2019, whereas they allege it actually prescribed in December 2018.

3

valuable mineral servitude for a full 10 years after the 2015 sale of the property to the Kents, by having PKLLC execute a formal acknowledgement of the succession's servitude prior to the 2015 sale. The Patin plaintiffs also alleged that Mr. Charlton's breach of duty caused them grave damages, because they would prematurely lose their mineral servitude on the property to the Kents. Over a year later, the Patin plaintiffs filed a first supplemental and amended petition, adding Scottsdale Insurance Company, Endurance American Specialty Insurance Company,[4] and Aspen Specialty Insurance Company, BSW's malpractice insurers, as additional defendants.

All defendants answered the suit. Mr. Charlton and BSW then filed an exception of no cause of action. Essentially, these defendants maintained that PKLLC is the owner of a mineral servitude on the property that, by operation of law, will not expire until 2025 at the earliest. Therefore, Mr. Charlton and BSW argued that the Patin plaintiffs failed to plead facts sufficient to establish any damages resulting from Mr. Charlton's conduct. The malpractice insurers joined in and adopted the exception of no cause of action.

On December 3, 2019, the Patin plaintiffs filed a second supplemental and amended petition and reiterated that the 2006 Act of Correction between Ms. Patin and PKLLC was a valid authentic act that correctly reserved a mineral servitude to Ms. Patin, just as the parties always intended with the 1998 sale. The 2006 Act of Correction and the 1998 sale were both attached to the amended petition. The Patin plaintiffs also alleged that their efforts in 2018 to commence oil and gas operations on the property were unsuccessful, and the mineral servitude prescribed in December of that year, at a time when oil and gas exploration companies were "aggressively" leasing properties in the area.[5]

After a hearing, the trial court ruled in favor of the defendants, granting the exception of no cause of action, and dismissing the Patin plaintiffs' petition with prejudice. The judgment was signed on January 11, 2021. In oral reasons, the trial court found that PKLLC owned the mineral servitude at least until 2025 and, thus, there was no damage from Mr. Charlton's alleged legal malpractice. The trial court further reasoned that the 2006 Act of

---

[4] The first supplemental and amended petition erroneously listed this defendant's name as Sompo International/Endurance American Specialty Insurance Company.

[5] The Patin plaintiffs also alleged that, in January 2019, the Louisiana Office of Conservation approved the creation of a drilling and production unit that included part of the property and, "on information and belief," a drilling company would commence operations in latter 2019.

4

Correction did not create a mineral servitude in favor of Ms. Patin, because an act of correction could not make a substantive change to the 1998 sale of the property. Thus, according to the trial court, when PKLLC sold the property to the Kents in 2015, PKLLC still owned both the surface and mineral rights and had properly reserved a mineral servitude in the sale to the Kents at that time. Additionally, the trial court did not allow the Patin plaintiffs to amend their petition again, since they had already tried and failed to state a cause of action in prior amendments.

The Patin plaintiffs appeal from the adverse judgment, claiming the trial court erred: (1) in granting the defendants' exception of no cause of action and failing to grant the Patin plaintiffs leave to amend their petition, and (2) in finding the 2006 Act of Correction was invalid.

## DISCUSSION

### Legal Malpractice Cause of Action

The peremptory exception of no cause of action questions whether the law affords the plaintiff any remedy under the allegations of the petition. The exception is triable solely on the face of the petition and any attached written exhibits. La. C.C.P. arts. 853 and 931; *Agrifund, LLC v. Radar Ridge Planting Co., Inc.,* 19-1528 (La. 11/25/19), 283 So.3d 492 *(per curiam); Baca v. Sabine River Authority,* 18-1046 (La. App. 1 Cir. 12/27/18), 271 So.3d 223, 227, *writ denied,* 19-0149 (La. 3/18/19), 267 So.3d 95. The court must presume all well-pleaded facts are true, must make all reasonable inferences in favor of the non-moving party, and must resolve any doubts in favor of the petition's sufficiency. The exceptor bears the burden of showing that the plaintiff has not stated a cause of action. The appellate court performs a *de novo* review of a district court's ruling on an exception of no cause of action. *Cheniere Constr., Inc. v. State, Dep't of Revenue & Taxation,* 19-1471 (La. App. 1 Cir. 9/18/20), 313 So.3d 992, 994, *writ denied,* 20-01194 (La. 12/8/20), 306 So.3d 431.

Generally speaking, Louisiana law recognizes a legal malpractice cause of action in favor of a client injured as a result of his attorney's negligent representation. *LeBlanc v. Alfred,* 15-0397 (La. App. 1 Cir. 12/17/15), 185 So.3d 768, 774. To establish a legal malpractice cause of action, a plaintiff must demonstrate the existence of an attorney-client relationship, negligent misrepresentation by the attorney, and loss caused by that

5

negligence. *Id.* The Patin plaintiffs have alleged facts proving an attorney-client relationship with Mr. Charlton and have also alleged facts tending to prove his negligent legal representation. The issue is whether the Patin plaintiffs have alleged sufficient facts to establish that Mr. Charlton's legal malpractice caused them loss.

Whether the Patin plaintiffs have sufficiently alleged facts showing a loss hinges on the validity of the 2006 Act of Correction and whether it created a mineral servitude in favor of Ms. Patin. If the 2006 Act of Correction *was* valid, as the Patin plaintiffs claim herein, then Ms. Patin's estate owned a mineral servitude on the property at the time of the 2015 sale to the Kents, but it prescribed from nonuse in 2018, because Mr. Charlton allegedly failed to properly preserve it, causing a valuable loss to the Patin plaintiffs. However, if the 2006 Act of Correction *was not* valid, as defendants claim herein, then PKLLC owned the minerals at the time of the 2015 sale, and its reservation of the mineral servitude for an additional 10 years in the 2015 sale document was valid until 2025, and the Patin plaintiffs have incurred no loss.

### Reservation of a Mineral Servitude

The Louisiana Mineral Code, La. R.S. 31:1, *et seq.,* is supplementary to the Louisiana Civil Code and is specifically applicable to the subject matter of mineral law. La. R.S. 31:2. If the Mineral Code conflicts with the Civil Code or other laws, the Mineral Code shall prevail. *Id.* If the Mineral Code does not expressly or impliedly provide for a particular situation, the Civil Code or other applicable laws apply. *Id. See American Lung Ass'n of La., Inc. v. State,* 93-0686 (La. App. 1 Cir. 11/10/94), 645 So.2d 1219, 1221-22, *writ denied,* 95-0078 (La. 3/10/95), 650 So.2d 1182.

A landowner may convey, reserve, or lease his right to explore and develop his land for production of minerals and to reduce them to possession. La. R.S. 31:15; *Frey v. Amoco Production Co.,* 603 So.2d 166, 171 (La. 1992). The basic mineral rights that may be created by a landowner are the mineral servitude, the mineral royalty, and the mineral lease. La. R.S. 31:16. A mineral servitude is the right of enjoyment of land belonging to another for the purpose of exploring for and producing minerals and reducing them to possession and ownership. La. R.S. 31:21. An owner's sale of land with a reservation of mineral rights creates a mineral servitude. *See Ohio Oil Co. v. Ferguson,* 213 La. 183, 203, 34 So.2d 746,

6

752 (1946); *SEMO, Inc. v. Bd. Of Com'rs for Atchafalaya Basin Levee Dist.,* 07-2571 (La. App. 1 Cir. 6/6/08), 993 So.2d 222, 226; *Indigo Minerals, LLC v. Pardee Minerals, LLC,* 45,160 (La. App. 2 Cir. 5/28/10), 37 So.3d 1122, 1128, *writs denied,* 10-1669, 10-1677 (La. 10/8/10), 46 So.3d 1274. Thus, when Ms. Patin sold the property to PKLLC in 1998, she desired to reserve a mineral servitude to herself; when the 1998 sale did not do so, the parties executed the 2006 Act of Correction to correct that omission.

The Mineral Code does not dictate the form by which a landowner reserves a mineral servitude in an act of sale. But, the Mineral Code does classify a mineral right, including a mineral servitude, as an incorporeal immovable. La. R.S. 31:18; *Steele v. Denning,* 456 So.2d 992, 998 (La. 1984); *Quality Environmental Processes, Inc. v. IP Petroleum Co., Inc.,* 16-0230 (La. App. 1 Cir. 4/2/17), 219 So.3d 349, 372, *writ denied,* 17-00915 (La. 10/9/17), 227 So.3d 833. Under the Civil Code, a transfer of immovable property must be by authentic act or by act under private signature. La. C.C. art. 1839; *see Peironnet v. Matador Resources Co.,* 12-2292 (La. 6/28/13), 144 So.3d 791, 806-07. An authentic act is defined as a writing executed before a notary public or other officer authorized to perform that function, in the presence of two witnesses, and signed by each party who executed it, by each witness, and by each notary public before whom it was executed. La. C.C. art. 1833. Louisiana jurisprudence demonstrates that parties to an instrument transferring immovable property may reform that instrument by authentic act to correct substantive errors. *See Blevins v. Manufacturers Record Pub. Co.,* 235 La. 708, 105 So.2d 392, 403 (La. 1957) (noting that when a deed conveying land contains an erroneous or ambiguous description, the parties to the deed are always permitted to reform the deed); *Bourgeois v. Landry,* 583 So.2d 36, 40 (La. App. 3 Cir.), *writ denied,* 587 So.2d 697 (La. 1991) (concluding a correction deed in authentic form was a valid act translative of mineral interests). These acts are sometimes referenced as "correction deeds." *See Blevins,* 105 So.2d at 403; *Bourgeois,* 583 So.2d at 40. The purpose of a correction deed is to admit mutual error and to change the original instrument to conform to the true intent of the parties. *Robinette v. Myers,* 510 So.2d 1332, 1334 (La. App. 3 Cir. 1987). The correction deed is clearly valid as between the parties, and under certain circumstances where no prejudice occurs, it may be valid as to third persons. *Id.*

7

In this case, the 1998 sale failed to reserve a mineral servitude to Ms. Patin. To correct this failure, and to accomplish the "transfer of immovable property" that Ms. Patin and PKLLC originally intended, Ms. Patin and PKLLC executed the 2006 Act of Correction, which was a valid authentic act. Such act fulfilled the requirements of La. C.C. arts. 1833 and 1839 and was in the nature of a correction deed. Thus, in 2015, Ms. Patin's estate, not PKLLC, owned the mineral servitude. So, Mr. Charlton's alleged failure to properly preserve the estate's servitude, and his preparation of a sale document that reserved mineral rights to PKLLC, when PKLLC did not own the mineral servitude, resulting in the estate's loss of the servitude, and current ownership of minerals with the Kents, and not with the Patin legatees or PKLLC, supports a legal malpractice cause of action against him, BSW, and their insurers.

In reaching the above conclusion, we expressly reject the defendants' position that the only "act of correction" recognized by Louisiana law is the notarial act of correction authorized by La. R.S. 35:2.1.[6] Although we agree that La. R.S. 35:2.1 expressly limits the use of a notarial act of correction to a *clerical* error, such begs the question of how a *substantive* error in a notarial act is corrected. That is, if the failure to reserve a mineral servitude in a sale of immovable property is a "substantive error," and such an error cannot be corrected by a notarial act of correction under La. R.S. 35:2.1, then the parties who make such an error must have some legal means by which to correct that error. As explained above, because the Mineral Code does not dictate that means, we conclude La. C.C. arts. 1833 and 1839 properly provide such a means herein. Ms. Patin and PKLLC's 2006 Act of

---

[6] Louisiana Revised Statute 35:2.1 provides:

A. (1) A clerical error in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by any of the following:
(a) The person who was the notary or one of the notaries before whom the act was passed.
(b) The notary who actually prepared the act containing the error.
\* \* \* \*

(2) The act of correction shall be executed before two witnesses and a notary public.

B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.

C. A certified copy of the act of correction executed in compliance with this Section shall be deemed to be authentic for purposes of executory process.

D. This Section shall be in addition to other laws governing executory process.

8

Correction was an authentic act between the parties, was proper under the Civil Code, and validly reserved a mineral servitude to Ms. Patin. Although this authentic act was titled "Act of Correction," it was *not* a notarial act of correction under La. R.S. 35:2.1.

Accordingly, based on our *de novo* review, accepting the Patin plaintiffs' well-pled allegations and exhibits attached to the petition as true, making reasonable inferences in their favor, and resolving all doubts in favor of the petitions' sufficiency, we conclude the Patin plaintiffs have stated a cause of action for legal malpractice against the defendants; further amendment of the pleadings is unnecessary. *See Cheniere Constr, Inc.,* 313 So.3d at 994. The trial court erred in granting the defendants' exception of no cause of action and dismissing the petition.

## CONCLUSION

For the assigned reasons, we reverse the January 11, 2021 judgment, granting the exception of no cause of action filed by David M. Charlton, Breazeale, Sachse & Wilson, LLP, Scottsdale Insurance Company, Endurance American Specialty Insurance Company, and Aspen Specialty Insurance Company, and dismissing the legal malpractice claims asserted by the Succession of Lucille Watts Patin, Pamela Sue Patin Quantz, Charleen Patin Taylor, Rebel Kelley Caplinger, Denis Curtin Kelley, II, Dorcas Marie Kelley, Kerry Watts Kelley, and Patin-Kelley, LLC. We assess costs of this appeal to David M. Charlton, Breazeale, Sachse & Wilson, LLP, Scottsdale Insurance Company, Endurance American Specialty Insurance Company, and Aspen Specialty Insurance Company.

**REVERSED.**

9

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2021 CA 0561

SUCCESSION OF LUCILLE WATTS PATIN, ET AL.

VERSUS

BREAZEALE, SACHSE & WILSON, L.L.P., ET AL.

**WOLFE, J., Dissents and Assigns Reasons.**

I respectfully dissent in this matter and would affirm the district court's judgment sustaining the defendants' peremptory exception raising the objection of no cause of action and dismissing the legal malpractice claims asserted by the Patin plaintiffs. It is my opinion that the 2006 "Act of Correction" purporting to correct a "scrivener's error" in the legal description of the property set forth in the 1998 conveyance is invalid, as the district court properly determined.

Based upon my *de novo* review of the petitions and the annexed documents, and accepting the alleged facts as true, it is beyond dispute that the Patin plaintiffs alleged facts tending to prove the existence of an attorney-client relationship with the defendant law firm, BSW, and tending to prove Mr. Charlton's negligence. However, for the following reasons I find that the Patin plaintiffs did not allege facts necessary to establish causation of damages arising from Mr. Charlton's negligence.

The pertinent issue surrounding the causation of damages involves an examination of the validity of the 2006 Act of Correction and a determination as to whether it created a mineral rights servitude in favor of Ms. Patin. In 2006, Ms. Patin and the LLC discovered that the 1998 conveyance did not reserve the mineral rights in the property to Ms. Patin. When the error was discovered, the parties chose to execute the 2006 Act of Correction in an attempt to clarify that Ms. Patin owned

the mineral rights and the LLC relinquished those rights in the property according to their true intent. To make a correction to an authentic act affecting immovable property that has been filed in the conveyance records, as was done with the 1998 conveyance, the legislature allows a filing of an affidavit of correction completed by the notary before whom the authentic act was passed. Louisiana Revised Statutes 35:2.1 currently states, in pertinent part and with emphasis added:

A. (1) A **clerical error** in a notarial act affecting movable or immovable property or any other rights, corporeal or incorporeal, may be corrected by an act of correction executed by any of the following:

(a) The person who was the notary or one of the notaries before whom the act was passed.

(b) The notary who actually prepared the act containing the error.

\* \* \*

(2) The act of correction shall be executed before two witnesses and a notary public.

B. The act of correction executed in compliance with this Section shall be given retroactive effect to the date of recordation of the original act. However, the act of correction shall not prejudice the rights acquired by any third person before the act of correction is recorded where the third person reasonably relied on the original act. The act of correction shall not alter the true agreement and intent of the parties.

It is clear from the language of the statute that an affidavit of correction may correct only a "clerical error," which is an error resulting from a minor mistake or inadvertence and not from reasoning or determination. See *Black's Law Dictionary* (11th ed. 2019). A reservation of mineral rights is a substantive change, not a minor mistake, clerical error, or a scrivener's error. The addition of a reservation of mineral rights changes the effect of the document in regard to the real rights held by the parties to the act. **Petro-Chem Operating Company, Inc. v. Flat River Farms, L.L.C.**, 51,212 (La. App. 2d Cir. 3/1/17), ___ So.3d ___, ___, 2017 WL 786868 \*7, writs denied, 2017-0564 and 2017-0562 (La. 6/5/17), 219 So.3d 338, 339. Additionally, the reservation of mineral rights in the sale of immovable property is

2

a substantive issue that implicates the thought process and intention of the parties to the transaction. Thus, an act of correction cannot be used to substantively change or correct the omission of a mineral rights reservation. **Id.**

The 2006 Act of Correction at issue specifically referenced a "scrivener's error" regarding the parties' intent. However, it is improper and invalid to use an act of correction for the purpose of changing the reservation of mineral rights, which is clearly not a simple scrivener's error. I further note that in 2006, when the Act of Correction was executed, La. R.S. 35:2.1(A) required that the act of correction be "executed by the notary before two witnesses and *another notary public*." (Emphasis added.) The 2006 Act of Correction did not comply with the requirements of the statute at that time, because it was not executed before another notary public. Acts of correction executed in improper form have no effect. See **First Nat. Bank, USA v. DDS Const., LLC**, 2011-1418 (La. 1/24/12), 91 So.3d 944, 955-956. Therefore, I conclude that the district court did not err in determining that the 2006 Act of Correction was invalid.

The LLC owned the mineral and surface rights in the property by virtue of the 1998 conveyance from Ms. Patin. When the Kents purchased the property from the LLC in 2015, the LLC continued to own the mineral rights because the act of sale reserved a mineral rights servitude in the LLC's favor. The LLC may still enjoy the fruits of the mineral rights on the property until at least 2025, when the use of the mineral rights servitude will prescribe if no good faith oil and gas exploration takes place on the property before that time. See La. R.S. 31:27, La. R.S. 31:28, and La. R.S. 31:29.[1] There is no damage to the Patin plaintiffs by the alleged negligent

---

[1] Louisiana Revised Statutes 31:27 provides, in pertinent part: "A mineral servitude is extinguished by: (1) prescription resulting from nonuse for ten years;" and Louisiana Revised Statutes 31:28 states, in pertinent part: " Prescription of nonuse of a mineral servitude commences from the date on which it is created." Additionally, La. R.S. 31:29 provides: "The prescription of nonuse running against a mineral servitude is interrupted by good faith operations for the discovery and production of minerals."

3

actions of BSW and Mr. Charlton, as they have not been forced to prematurely give up the mineral rights in the property. Thus, the Patin plaintiffs have not stated a viable cause of action for legal malpractice against BSW and Mr. Charlton.

Pursuant to La. Code Civ. P. art. 934, if a petition fails to state a cognizable cause of action and the grounds for the objection can be removed by amendment, the plaintiffs should be allowed to amend their demand. **LeBlanc v. Alfred**, 2015-0397 (La. App. 1st Cir. 12/17/15), 185 So.3d 768, 777. On the other hand, where the grounds for the objection cannot be so removed, the district court is not required to allow time to amend and the action shall be dismissed. **Adams v. Owens-Corning Fiberglas Corp.**, 2004-1296 (La. App. 1st Cir. 9/23/05), 921 So.2d 972, 976, writ denied, 2005-2501 (La. 4/17/06), 926 So.2d 514. The decision to allow amendment is within the sound discretion of the district court. **LeBlanc**, 185 So.3d at 777. In this case, the district court allowed two previous amendments to the petition, the second time over the objections of BSW. It is my opinion that allowing further amendments by the Patin plaintiffs at this point would merely be an invitation to engage in speculative pleading. Thus, I would not disturb the district court's sound discretion in refusing a third attempt to amend the petition. See **Allstate Vehicle and Property Ins. Co. v. Andrus Restoration, LLC**, 2019-1279 (La. App. 1st Cir. 9/21/20), 314 So.3d 51, 56.

For these reasons, I respectfully dissent and would affirm the district court's judgment in its entirety.

4

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2021 CA 0561

### SUCCESSION OF LUCILLE WATTS PATIN, PAMELA SUE PATIN QUANTZ, CHARLEEN PATIN TAYLOR, REBEL KELLEY CAPLINGER, DENIS CURTIN KELLEY, II, DORCAS MARIE KELLEY, KERRY WATTS KELLEY, AND PATIN-KELLEY, LLC

### VERSUS

### BREAZEALE, SACHSE & WILSON, L.L.P., DAVID M. CHARLTON, AND XYZ INSURANCE COMPANY ("XYZ")

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., concurs in part and dissents in part.**

In deciding an exception of no cause of action, we are guided by the well-settled principle that the function of an exception of no cause of action is to test the legal sufficiency of the petition by determining whether the law affords a remedy on the facts alleged in the pleading. **Dodson & Hooks, APLC v. Louisiana Community Development Capital Fund, Inc.,** 2020-01002 (La. 2/17/21), 310 So.3d 553 (*per curiam*). No evidence may be introduced to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931. Therefore, the court reviews the petition and accepts well pleaded allegations of fact as true, and the issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. **Dodson & Hooks, APLC,** 310 So.3d at 553. Furthermore, the facts shown in any documents annexed to the petition must also be accepted as true. **Expert Riser Solutions, LLC v. Techcrane International, LLC,** 2018-0612 (La.App. 1 Cir. 12/28/18), 270 So.3d 655, 663.

Applying these principles to the petition and attached exhibits, I agree with the majority that the Patin plaintiffs have stated a cause of action. Therefore, I concur with the result reached. However, I find that the majority errs in addressing the validity of the 2006 Act of Correction. Assessing the validity of the 2006 Act of Correction, which

for purposes of the exception of no cause of action must be accepted as true, was an improper and unnecessary step. By taking this additional step, the majority, on an exception of no cause of action, decided an issue essential to whether the Patin plaintiffs sustained damages.[1] Accordingly, I dissent with the portion of the opinion addressing the validity of the 2006 Act of Correction.

---

[1] We note that in **Dodson & Hooks, APLC,** the Louisiana Supreme Court stated:

> In reaching this conclusion, *we emphasize we are not expressing any opinion on the merits.* Rather, our holding simply stands for the proposition that based on the liberal standard for deciding an exception of no cause of action, we find plaintiff has alleged sufficient facts to state a cause of action. If Dodson & Hooks believes plaintiff is unable to establish these facts, it has other procedural remedies available, such as filing a properly-supported motion for summary judgment.

(Emphasis added); **Dodson & Hooks, APLC,** 310 So.3d at 553-54.